**In re Steven Lee STEAKLEY Robin Lynn Steakley, Debtors.**

**No. 06–31181.**

United States Bankruptcy Court,
E.D. Tennessee.

Jan. 26, 2007.

Law Offices of Mayer & Newton, John P. Newton, Jr., Knoxville, Tennessee, for Debtors.

Williams & Prochaska, P.C., Joseph R. Prochaska, Victoria A. Ferraro, Nashville, Tennessee, for Wells Fargo Financial Acceptance.

## MEMORANDUM ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

RICHARD STAIR, JR., Bankruptcy Judge.

This contested matter is before the court on the Objection of Wells Fargo Financial Acceptance to Confirmation of Chapter 13 Plan (Objection to Confirmation) filed on July 17, 2006, by Wells Fargo Financial Acceptance (Wells Fargo). The court held a preliminary hearing on August 16, 2006, at which time the parties agreed that an evidentiary hearing was not necessary, and that the matter could be decided on stipulations, briefs, and oral argument.

Pursuant to the court's August 17, 2006 scheduling Order, the sole issue to be resolved is "whether 11 U.S.C. § 1325(a)(5) (2005) allows the Debtors to surrender the 2005 Ford Ranger securing the claim of Wells Fargo Financial 'in full satisfaction of the debt.'" The parties filed Joint Stipulations of Undisputed Facts (Joint Stipulations) on August 28, 2006, and oral argument was held on October 11, 2006. Wells Fargo filed its Memorandum of Law in support of its Objection to Confirmation on September 5, 2006, the Debtors filed their Brief in Support of Confirmation on September 29, 2006, and the Chapter 13 Trus-

tee filed a Brief in Opposition to Wells Fargo's position on October 5, 2006.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(L) (West 2006).

### I

The Debtors filed the Voluntary Petition commencing their bankruptcy case under Chapter 13 of the Bankruptcy Code on June 6, 2006. Wells Fargo is a secured creditor under the terms of a Retail Installment Contract dated September 30, 2005, granting it a security interest in the Debtors' 2005 Ford Ranger (Ranger), the purchase price of which was financed by Wells Fargo. On June 12, 2006, Wells Fargo filed a claim in the amount of $24,578.45.

The Debtors' Chapter 13 Plan, as amended by their Second Amended Pre-Confirmation Chapter 13 Plan (Plan) filed on August 1, 2006, proposes weekly payments to the Chapter 13 Trustee of $300.00 for 60 months, plus all tax refunds in excess of $1,500.00, resulting in a projected 100% dividend to nonpriority unsecured creditors. With respect to Wells Fargo's secured claim, the Plan proposes to "Surrender [the Ranger] in Full Satisfaction of the Debt."

In its brief and in oral argument on October 11, 2006, Wells Fargo argues that under long-standing Supreme Court precedent, the rights and claims of creditors in bankruptcy are determined by state law unless the Bankruptcy Code expressly modifies those rights and claims, and that whether Wells Fargo is entitled to a deficiency claim should, therefore, be determined under Tennessee law.

On March 13, 2006, the court issued its opinion in *In Re Ezell*, 338 B.R. 330 (Bankr.E.D.Tenn.2006), holding that 11 U.S.C. § 1325(a), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), removed the ability of secured creditors to bifurcate their claims under 11 U.S.C. § 506(a) (2005) into secured and unsecured components when the provisions of the alphanumeric paragraph located at the end of § 1325(a) are met. *Ezell*, 338 B.R. at 342. Accordingly, under this "Anti-Cramdown Paragraph," also referred to as the "Hanging Paragraph," once the requirements therein are met, debtors wishing to retain possession of collateral under § 1325(a)(5)(B) must pay the full amount of the secured claim, and debtors wishing to surrender collateral under § 1325(a)(5)(C) may do so in full satisfaction of the debt. *Ezell*, 338 B.R. at 340. Because Wells Fargo has posed an argument that differs from those argued and decided in *Ezell*, the court agreed to consider Wells Fargo's objection. The court will not, however, rehash the issues determined in *Ezell* and will not consider any of Wells Fargo's arguments that were previously decided.[1] To the extent Wells Fargo relies on these *Ezell*-related arguments, the court finds *Ezell* controlling on these issues and adopts its analysis in that decision. A copy of the *Ezell* opinion is attached hereto and incorporated herein by reference.

### II

Under BAPCPA, 11 U.S.C. § 1325(a) provides, in material part:

---

1. In its brief and during oral argument, Wells Fargo raised Congressional intent and prior legislative history, in addition to the state law issues. Because the court has previously addressed these issues at great length in *Ezell*, finding that the language of the Anti-Cramdown Paragraph is not ambiguous, it will not resort to any further examination under the canons of statutory interpretation. Accordingly, the court will not consider Wells Fargo's arguments focusing upon Congressional intent and/or legislative history.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

\* . \* · \* \* \* \*

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder;

. . . . .

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day [period[2]] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing[.]

11 U.S.C. § 1325(a).[3]

In *Ezell*, JPMorgan Chase Bank, N.A. objected to confirmation of the debtors' plan, which provided for surrender of its collateral in full satisfaction of the debt owed. Amicus Curiae Briefs were filed by Knoxville TVA Employees Credit Union, Y–12 Federal Credit Union, Tennessee Members 1st Federal Credit Union, Holston Methodist Federal Credit Union, Citizens National Bank, Bank of Tennessee, ORNL Federal Credit Union, and TNBank, collectively, and by the National Association of Consumer Bankruptcy Attorneys. The various parties argued the

---

**2.** The court supplies this word which was presumably inadvertently omitted by the drafters of the statute.

**3.** All of the applicable requirements set forth in the Anti–Cramdown Paragraph apply in this case. The Debtors purchased the Ranger, a motor vehicle, on September 30, 2005, which was 249 days prior to filing their Voluntary Petition and within the 910–day period set forth in the statute. By virtue of the Retail Installment Contract, the Debtors granted Wells Fargo a purchase money security interest in the Ranger, which was acquired by the Debtors for their personal use. Wells Fargo has properly perfected its security interest, and as of the date of filing, Wells Fargo held a claim secured by the Ranger in the amount of $24,578.45.

following: (1) that the Anti–Cramdown Paragraph ensured that a creditor holding a "910 Claim" held a fully secured claim for the amount of the underlying debt and any deficiency following liquidation of the collateral would be paid as a secured claim; (2) that the Anti–Cramdown Paragraph did not apply to § 1325(a)(5)(C) prior to enactment of BAPCPA, and therefore, it did not apply post-BAPCPA, and a creditor holding a "910 Claim" would, therefore, still be entitled to an unsecured deficiency claim following liquidation of its collateral; (3) that the Anti–Cramdown Paragraph eliminated application of § 1325(a)(5) for any "910 Claim" since the creditor would no longer possess an allowed secured claim under § 506; and (4) that the Anti–Cramdown Paragraph ensured that a creditor holding a "910 Claim" held a fully secured claim for the underlying debt, irrespective of whether the collateral was to be retained or surrendered, leaving no possibility of either a cramdown or a deficiency balance.

In making its determination in *Ezell,* the court analyzed the pre- and post-BAPCPA versions of both § 1325(a)(5) and § 506(a), finding that the pre-BAPCPA version of § 1325(a)(5)(C) "relied upon pre-BAPCPA § 506(a) to bifurcate a creditor's claim into its allowed secured and unsecured components" when valuation was called into question. *Ezell,* 338 B.R. at 338 (footnote omitted). The court held that

> The argument that Pre–BAPCPA § 506(a) had no application to surrender under Pre–BAPCPA § 1325(a)(5)(C) is misplaced. Valuation of a creditor's allowed secured claim under Pre–BAPCPA § 506(a) was "determined in light of the purpose of the valuation and of the proposed disposition or use of such property...." 11 U.S.C. § 506(a) (2004). Upon surrender under Pre–BAPCPA § 1325(a)(5)(C), liquidation value was clearly the yardstick by which the allowed secured claim was deter-

mined, while, for cramdown purposes under Pre–BAPCPA § 1325(a)(5)(B), replacement value was the criteria. *See Assoc. Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 1885, 138 L.Ed.2d 148 (1997).

*Ezell,* 338 B.R. at 339–40 (footnote omitted).

In accordance with this court's determination in *Ezell,* the bankruptcy court in *In re Brown* summarized the effect of the Anti–Cramdown Paragraph as follows:

> [I]f a debt is fully secured by virtue of the language of the Hanging Paragraph when the debtor retains the collateral in accordance with § 1325(a)(5)(B), then it also must be fully secured upon surrender of the collateral in accordance with § 1325(a)(5)(C). The Hanging Paragraph does not make any distinction between (B) and (C), and so neither can the Court. Such surrender would therefore satisfy the creditor's allowed secured claim in full and the creditor would not be entitled to an unsecured deficiency claim. There is no language anywhere in § 1325 that suggests a different result. If the Hanging Paragraph renders a creditor's claim fully secured, it is fully secured in all contexts. The Hanging Paragraph by its very language applies to the entirety of § 1325(a)(5)—not just § 1325(a)(5)(B)— and the same language cannot mean one thing if applied to § 1325(a)(5)(B) and another when applied to § 1325(a)(5)(C) to suit the preferences of secured creditors. No deficiency or unsecured claim can result from a claim that is fully secured.

*In re Brown,* 346 B.R. 868, 876–77 (Bankr. N.D.Fla.2006); *see also In re Payne,* 347 B.R. 278, 283 (Bankr.S.D.Ohio 2006) ("From a practical standpoint, this application of § 1325(a)(5) requires the creditor to forego the opportunity to take advantage

of the provisions of § 506 should it liquidate the collateral for less than the amount it is due, just as it requires the debtor to do so should the debtor decide to retain the vehicle.").

Wells Fargo acknowledges that the pre-BAPCPA version of § 506(a) modified a creditor's state law rights by requiring that a deficiency balance be determined "in light of the purpose of the valuation and of the proposed disposition or use" of the collateral, rather than by relying upon Article 9 of the Uniform Commercial Code. 11 U.S.C. § 506(a) (2004). In cases of surrender, that method was generally determined by a liquidation or foreclosure sale of the property, with the remaining deficiency balance constituting an allowed unsecured claim. However, since under BAPCPA, § 506(a) no longer applies to "910 Claims," Wells Fargo argues that there is no longer a provision of the Bankruptcy Code altering state law rights under the Uniform Commercial Code and that the bankruptcy court has been taken out of the valuation process. Wells Fargo argues, therefore, that there is a "gap" that must be filled through application of state law, and so, all "910 Claims" are to be valued under Article 9, which allows for the assertion of deficiency claims in the event of liquidation and/or foreclosure.

■ "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Nevertheless, *"Butner* requires that when an actual conflict exists between state laws and bankruptcy laws enacted by Congress, the state laws are suspended." *Tidewater Fin. Co. v. Curry (In re Curry)*, 347 B.R. 596, 600 (6th Cir. BAP 2006). "The Bankruptcy Code is federal law that preempts state law where such laws conflict. Creditors' rights are curtailed in many ways once a debtor files bankruptcy due to the Bankruptcy Code's provisions regarding the automatic stay, discharge, and distribution of non-exempt assets, for example ... [and] there is nothing inappropriate about bankruptcy laws affecting a creditor's rights to recover under state law." *Brown*, 346 B.R. at 876.

■ Here, Wells Fargo is incorrect in its contention that § 506(a) is the only section of the Bankruptcy Code that allows for the modification of a secured creditor's rights. Section 1322 (11 U.S.C. § 1322 (2005)) expressly provides, in material part, that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]" 11 U.S.C. § 1322(b)(2) (2005). And even though the valuation process of § 506(a) is removed from the equation for "910 Claims," the argument advanced by Wells Fargo is flawed because the Anti–Cramdown Paragraph supersedes state law by providing an adequate method of valuation. The Anti–Cramdown Paragraph unambiguously states that for purposes of the cramdown provisions of 11 U.S.C. § 1325(a)(5)(B), § 506(a) "shall not apply" to a "910 Claim." Accordingly, a secured creditor falling within the scope of the Anti–Cramdown Paragraph has a fully secured claim for the amount of its debt, irrespective of whether the Debtor chooses to retain the collateral under § 1325(a)(5)(B) or to surrender it under § 1325(a)(5)(C).

Section 1325(a)(5)(C) cannot be read in a vacuum, and the court disagrees with Wells Fargo's interpretation of the interplay between the allowance of a secured

claim and a determination of a creditor's secured status. It is through 11 U.S.C. § 501(a) (2005) that creditors are authorized to file proofs of claim. Allowance of claims or interests is then addressed by 11 U.S.C. § 502(a) (2005), which provides that a proof of claim is deemed allowed unless a party in interest objects, and "[a] proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). With respect to a claim that is undersecured, § 506(a) kicks in to allow for bifurcation of the claim into secured and unsecured components and provides the methods of valuation to be utilized for doing so, based upon the "proposed disposition or use of such property." 11 U.S.C. § 506(a)(1).

Section 506(a) does not, however, provide any basis for alteration of the total amount of the creditor's claim, which is determined as of the filing date and reflected upon the proof of claim. Removal of § 506 from the equation simply results in the removal of a debtor's or creditor's ability to bifurcate the total claim into separate secured or unsecured portions. It does not change the creditor's position as a secured creditor; instead, it solidifies the creditor's standing as a fully secured creditor.

Pre–BAPCPA, an undersecured creditor was not authorized to bifurcate its claim by virtue of state law; it was through application of § 506(a), which required that value be determined "in light of the purpose of the valuation and of the proposed disposition or use of such property." "Upon sur-

render under Pre–BAPCPA § 1325(a)(5)(C), liquidation value was clearly the yardstick by which the allowed secured claim was determined, while for cramdown purposes ... replacement value was the criteria." *Ezell*, 338 B.R. at 339–40 (citing *Assoc. Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 1885, 138 L.Ed.2d 148 (1997)). Under BAPCPA, when cramdown under § 1325(a)(5)(B) is authorized, § 506(a) applies, and a creditor is still authorized to bifurcate its claim into secured and unsecured components. However, BAPCPA now expressly sets forth the valuation method to be employed in Chapter 7 and 13 cases where a "910 Claim" is not involved. *See* 11 U.S.C. § 506(a)(2).[4] In "910 Claims," bifurcation does not occur, and the creditor is deemed fully secured for the amount of the debt, notwithstanding § 506(a).

■ Section 1325(a)(5)(C) must also be read in conjunction with other provisions of Chapter 13 of the Bankruptcy Code, including § 1322(b)(2) and the Anti–Cramdown Paragraph. To reiterate the court's holding in *Ezell*,

[W]hen the creditor files its claim as secured, the Anti–Cramdown Paragraph precludes the use of Revised § 506(a) to reduce or bifurcate that claim into secured and unsecured components. Unless the amount of the claim is subject to reduction for reasons *other than collateral value*, the creditor's allowed secured claim is fixed at the amount at which the claim is filed.

*Ezell*, 338 B.R. at 340 (emphasis added). Since the focus of Wells Fargo's argument

---

**4.** (2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With

respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. § 506(a)(2).

ultimately falls back on the proper valuation of the claim and its entitlement to a deficiency claim, its argument must fail. Irrespective of the vehicle used to do so, i.e., the Uniform Commercial Code or another state statutory basis, "[a]llowing a creditor to pursue a deficiency claim following surrender of collateral pursuant to § 1325 would in all practical effect bifurcate the secured creditor's claim, in violation of the plain meaning of the hanging paragraph." *In re Evans,* 349 B.R. 498, 501 (Bankr.E.D.Mich.2006).

Certainly, state law defines creditors' rights, including the right to a deficiency. However, state law determines rights in property only to the extent such rights are not modified by the Bankruptcy Code. Section 1325(a)(5), along with § 1322(b)(2) (which provides that a plan may modify the rights of holders of secured claims), expressly permits modification of secured creditors' rights, including hanging paragraph creditors. Consequently, even though [a creditor] might be entitled to a deficiency outside of bankruptcy, it is not entitled to an allowed claim for any such deficiency here[.]

*In re Osborn,* 348 B.R. 500, 506 (Bankr. W.D.Mo.2006) (footnotes and internal quotations omitted).

Based upon the court's determination in *Ezell* and the foregoing analysis, the court finds that state law is preempted by the Bankruptcy Code with respect to modification of secured creditors' rights under § 1325(a)(5), and that by removing § 506 from application to "910 Claims," the Anti–Cramdown Paragraph serves to solidify the secured status of a creditor holding a "910 Claim" by providing that creditor with a fully secured claim, without regard to whether the debtor proposes to retain or surrender the collateral. Accordingly, Wells Fargo's Objection to Confirmation filed on July 17, 2006, will be overruled, and the Debtors' Chapter 13 Plan shall be confirmed.