**In re Natalie Dionne RODRIGUEZ, Debtor.**

**Wells Fargo Financial Acceptance, Appellant,**

v.

**Natalie Dionne Rodriguez; Karla Forsythe, Chapter 13 Trustee, Appellees.**

**BAP No. WW–07–1046–MoDJ. Bankruptcy No. 06–41999.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on July 27, 2007.

Filed Aug. 28, 2007.

Richard J. Hayden, Richard J. Hayden, P.S., Spokane, WA, for Wells Fargo Financial Acceptance.

Robert Charles Russell, Robert C. Russell, PC, Vancouver, WA, for Natalie Dionne Rodriguez.

Before: MONTALI, DUNN and JAROSLOVSKY,[1] Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

A chapter 13 debtor purchased a vehicle for her personal use with financing obtained within 910 days of her petition date. Debtor filed a plan providing for surrender of the vehicle in full satisfaction of the secured claim, relying on the infamous "hanging paragraph" following 11 U.S.C. § 1325(a)(9),[2] and objected to the creditor's claim. Applying the hanging paragraph, the bankruptcy court concluded that the debtor's proposed surrender extinguished the creditor's deficiency claim. The court disallowed the creditor's claim and overruled the creditor's objections to the debtor's plan. The creditor appealed. Today we join the swelling legion of courts writing on the subject, and we REVERSE, joining one court of appeals, several district courts, and a minority of bankruptcy courts, departing from the result reached by two of our fellow bankruptcy appellate panels and a majority of bankruptcy courts.

## I. FACTS

Appellee Natalie Dionne Rodriguez ("Debtor") filed a chapter 13 petition on August 29, 2006. On the same date, she filed a chapter 13 plan providing for 100 percent payment to creditors over 42

1. Hon. Alan Jaroslovsky, Bankruptcy Judge for the Northern District of California, sitting by designation.

2. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, as revised by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, Apr. 20, 2005, 119 Stat. 23 ("BAPCPA").

months. In addition, the plan provided that Debtor would surrender a 2004 Pontiac Aztec (the "Aztec") to Appellant Wells Fargo Financial Acceptance ("Wells Fargo") upon plan confirmation "in full satisfaction of the entire debt owed to [Wells Fargo]." Debtor noted, and Wells Fargo does not dispute, that the Aztec was purchased within 910 days of her petition date. As such, Wells Fargo belongs to a class of creditors frequently referred to generally and in this opinion as "910 creditors," and the Aztec is known as a "910 vehicle." Debtor's plan also provided, in Paragraph 9 (entitled "Revestment of Property"), that ". . . during the pendency of the plan all property of the estate as defined by [section] 1306(a) shall remain vested in the Debtors (sic) . . . ."

On November 2, 2006, Debtor filed an objection to Wells Fargo's claim stating in relevant part:

> Pursuant to [section] 1325, a surrender of a "910" vehicle is in full satisfaction of the underlying debt. *See, In re Pool,* [351 B.R. 747,] 2006 WL 2801934 (Bankr.D.Or.2006) (sides with overwhelming majority of cases that the surrender of a "910" vehicle is in full satisfaction of the debt).

Wells Fargo filed a reply to the objection, an objection to Debtor's chapter 13 plan, and two memoranda of points and authorities urging the bankruptcy court to reject the argument that surrender of a 910 vehicle through a chapter 13 plan extinguishes the deficiency claim of a 910 creditor.

The bankruptcy court held two hearings before issuing a memorandum decision indicating that it would "follow the majority view, holding that upon surrender of secured property pursuant to [section] 1325(a)(5)(C), the secured creditor's claim is satisfied in full, thereby precluding any deficiency claim."

On January 24, 2007, the bankruptcy court entered an order granting relief from the automatic stay to Wells Fargo, overruling Wells Fargo's objection to Debtor's plan, and sustaining Debtor's objection to Wells Fargo's claim. Wells Fargo filed a timely notice of appeal on January 30, 2007. Because Wells Fargo filed an ineffective statement of election to have the district court hear the appeal, we entered an order on March 8, 2007, retaining jurisdiction over the appeal.[3]

On July 5, 2007, Debtor's counsel submitted a declaration contending that the appeal had become moot. On the same date, Debtor filed with the bankruptcy court a notice of withdrawal of her chapter 13 plan (which had not been confirmed as of that date) and indicated that she would surrender the Aztec "but not in full satisfaction of the debt." According to the declaration, "the primary issue of this appeal is now resolved and made moot by the withdrawal of [Debtor's] plan." Debtor did not indicate what she intended to do about the portion of the January 24, 2007, order sustaining her objection to Wells Fargo's claim. On July 11, Debtor filed her amended chapter 13 plan with the bankruptcy court,[4] stating that the Aztec would be "surrendered at confirmation *not* in full satisfaction of the entire debt owed

---

**3.** In addition, on June 6, 2007, we issued an order allowing Boeing Employees' Credit Union ("Boeing") and the National Association of Consumer Bankruptcy Attorneys ("NACBA") to file *amici curiae* briefs in support of the positions of Wells Fargo and Debtor, respectively.

**4.** We obtained a copy of the amended plan from the bankruptcy court's electronic docket.

to [Wells Fargo]." (Emphasis in original). The "Revestment of Property" provision that appeared at Paragraph 9 of the initial plan is repeated verbatim.

On July 9, 2007, Wells Fargo and Boeing filed objections to Debtor's position that the appeal is now moot. Boeing essentially requested that we retain jurisdiction because lenders in general are affected by the issue on appeal. Wells Fargo argued, among other things, that the appeal is not moot because Debtor has not requested or stipulated to vacatur of the order disallowing Wells Fargo's claim, which is the subject of the appeal. Consequently, according to Wells Fargo, a portion of the controversy remains live on appeal. Alternatively, Wells Fargo contended that two exceptions to the mootness doctrine apply: (1) the case on appeal is capable of repetition yet evading review, and (2) Debtor's voluntary cessation of its position precludes mootness.

Debtor filed a reply disputing that the exceptions to mootness apply, but she did not address Wells Fargo's argument that the order disallowing its claim remains extant, and the appeal is thus not moot. Rather, Debtor simply states that "Wells Fargo has received exactly what it has asked for and there is no further relief that Wells Fargo can obtain from the court."

On July 11, 2007, we issued an order determining that, based on the circumstances then existing, the appeal was not moot. We also ordered that the positions of parties not wanting to appear at oral argument would be submitted on the briefs. At oral argument, Debtor's counsel did not appear, although counsel for *amicus* NACBA did present arguments supporting affirmance.

## II. ISSUES

(1) Is this appeal moot?

(2) Does the hanging paragraph of section 1325 allow a chapter 13 debtor to surrender, through a plan, a 910 vehicle in full satisfaction of the indebtedness remaining on it?

## III. STANDARD OF REVIEW

■ This case presents no factual issues, but solely one of statutory construction. Issues of statutory interpretation are questions of law which we review de novo. *County of El Dorado v. Crouch (In re Crouch)*, 199 B.R. 690, 691 (9th Cir. BAP 1996), citing *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1357 (9th Cir.1986).

## IV. JURISDICTION

■ Ordinarily we have jurisdiction over appeals of final orders via 28 U.S.C. § 158 but we lack jurisdiction to hear a moot appeal. *I.R.S. v. Pattullo (In re Pattullo)*, 271 F.3d 898, 901 (9th Cir.2001); *see also Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 998 (9th Cir.2005), and *Chang v. U.S.*, 327 F.3d 911, 918 (9th Cir.2003). "Our mootness inquiry focuses upon whether we can still grant relief between the parties." *Pattullo*, 271 F.3d at 901. " 'If an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal is moot and must be dismissed.' " *Id.*, quoting *United States v. Arkison (In re Cascade Rds., Inc.)*, 34 F.3d 756, 759 (9th Cir.1994); *see also Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895) ("The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of

law which cannot affect the matter in issue in the case before it.").

▇▇▇ That said, an appeal is not moot "if the court can fashion some form of meaningful relief" for the appellant in the event it decides the appeal on the merits in its favor. *Pattullo*, 271 F.3d at 901; *Burrell*, 415 F.3d at 998. Here, Wells Fargo seeks a reversal of the bankruptcy court's order overruling its objection to Debtor's chapter 13 plan and sustaining Debtor's objection to its claim on the grounds that surrender of the Aztec extinguished its deficiency claim. While Debtor has withdrawn the challenged plan, she has not sought or stipulated to a vacatur of the order disallowing Wells Fargo's claim. Based upon the current state of the record, if Debtor's amended chapter 13 plan were confirmed, Wells Fargo would be denied the right to be treated as an unsecured creditor and be paid under the plan. Consequently, if we reverse on the merits, we could grant Wells Fargo effective relief by way of reinstatement of its claim. A live case or controversy thus still exists on appeal, and we therefore have jurisdiction.

Because we hold that the appeal is not moot based on the relief we can grant, we will not address any of the exceptions to mootness urged by Wells Fargo or *amicus* Boeing.

## V. DISCUSSION

In cases filed prior to the effective date of BAPCPA, chapter 13 debtors could surrender collateral (there was no separate distinction for 910 vehicles) and treat the amount of debt remaining after the creditor realized foreclosure value as an unsecured claim, or divide the debt into a secured portion (representing the replacement value of the collateral) and unsecured portion (representing the deficiency), pay the secured portion in full inside or outside the plan, and pay the unse-cured portion in the same manner that they were paying other unsecured debts (which could be less than payment in full). *In re Ezell,* 338 B.R. 330, 336 (Bankr. E.D.Tenn.2006). BAPCPA changed all this with respect to 910 vehicles by adding the hanging paragraph (an unnumbered paragraph immediately following section 1325(a)(9)). The relevant portions of section 1325(a)(5), plus the hanging paragraph, now provide:

Except as provided in subsection (b), the court shall confirm a plan if—

\* \* \*

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B) (i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim ...

\* \* \*

(C) the debtor surrenders the property securing such claim to such holder[.]

\* \* \*

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle....

11 U.S.C. § 1325(a).

In essence, the hanging paragraph renders section 506 unavailable to debtors proposing plans affecting claims secured by 910 vehicles. Section 506(a)(paragraph

(2) of which was added by BAPCPA) provides:

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, *is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property,* or to the extent of the amount subject to setoff, as the case may be, *and is an unsecured claim to the extent that the value of such creditor's interest* or the amount so subject to setoff *is less than the amount of such allowed claim.* Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the *replacement value* of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a *retail merchant* would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. § 506(a) (emphasis added).[5]

■ Therefore, pursuant to the hanging paragraph, section 506 does not apply if (1) the creditor has a purchase-money lien, (2) the debt was incurred within 910 days before the petition date, and (3) the collateral is a motor vehicle acquired by a debtor for his or her personal use. The parties do not dispute that all three conditions described in the hanging paragraph exist here. Instead, they dispute how or whether to apply the hanging paragraph since Debtor proposes to surrender the Aztec under section 1325(a)(5)(C) as of confirmation of her amended plan.

■ The parties disagree on how the application of the hanging paragraph affects 910 vehicle surrenders, with Wells Fargo contending that state law governs and that Congress did not intend to extinguish its deficiency claims and Debtor contending that surrender of the Aztec wipes out any undersecured deficiency on Wells Fargo's claim. Numerous courts have faced this issue already, with the majority of bankruptcy courts holding that the hanging paragraph, by eliminating recourse to section 506, eliminates the deficiency claims of 910 creditors upon surrender. The minority of courts have held that the unavailability of section 506 is irrelevant and that the deficiency claims of the 910 creditors survive section 1325(a)(5)(C) surrender. For the reasons set forth below, we agree with the minority line of cases.

Many of the cases in the majority line focus on the "plain meaning" of the hanging paragraph, holding that its unambiguous terms render section 506 inapplicable to the surrender of 910 vehicles pursuant to section 1325(a)(5)(C). *See, e.g., Quick,* 371 B.R. at 463–64 ("the language of the hanging paragraph is neither ambiguous, nor does literal application of its terms lead to a result that is demonstrably at

---

**5.** Section 506(a)(1) "bifurcates secured claims into secured and unsecured portions, with the secured portion limited to the value of the collateral at the time of filing, and the unsecured portion equal to the difference between the collateral's value and the balance of the loan." *DaimlerChrysler Fin'l Servs. Americas LLC v. Quick (In re Quick),* 371 B.R. 459 (10th Cir. BAP 2007), *affirming In re Quick,* 360 B.R. 722 (Bankr.N.D.Okla.2007).

odds with the apparent intentions of its drafters"); *Capital One Auto Finance v. Osborn (In re Osborn),* 363 B.R. 72, 77 (8th Cir. BAP 2007), *affirming In re Osborn,* 348 B.R. 500 (Bankr.W.D.Mo.2006) ("The hanging paragraph does not exclude any of the sub-paragraphs of [section] 1325(a)(5). Had Congress intended to exclude [section] 1325(a)(5)(C), it would have been simple to do so.").[6]

We agree that a "plain meaning" approach is proper and that the hanging paragraph unambiguously provides that section 506 is inapplicable when a debtor surrenders a 910 vehicle pursuant to section 1325(a)(5)(C). We part company with the majority of cases, however, in concluding how section 506's inapplicability affects the right of the 910 creditor to assert a claim for any deficiency following surrender of the 910 vehicle. The majority position, as thoroughly analyzed in *In re Pinti,* 363 B.R. 369, 379–80 (Bankr.S.D.N.Y. 2007), holds that section 506 (and only section 506) creates, defines and governs deficiency claims. In other words, if section 506 does not apply, no deficiency claim can exist.[7]

We disagree with *Pinti* that section 506 defines and determines the nature of a creditor's secured interest. We have just rejected the notion that section 506 is a definitional section in *Trejos v. VW Credit, Inc., (In re Trejos),* 374 B.R. 210 (9th Cir. BAP 2007).

As discussed, *infra,* we agree with *In re Particka,* 355 B.R. 616 (Bankr.E.D.Mich. 2006) on this issue, and while we acknowledge the scholarly analysis of *Pinti* and other courts, we believe that to start with the view that section 506 is the sole source

---

6. Other cases adopting the majority line of reasoning include *Ezell,* 338 B.R. at 342; *In re Barrett,* 2007 WL 2081702 (Bankr.M.D.Ala., July 17, 2007); *In re Williams,* 2007 WL 2122131 (Bankr.E.D.Va., July 19, 2007); *In re Gentry,* 2006 WL 3392947 (Bankr.E.D.Tenn., Nov.22, 2006); *In re Payne,* 347 B.R. 278 (Bankr.S.D.Ohio 2006); *In re Turkowitch,* 355 B.R. 120, 126 (Bankr.E.D.Wis.2006); *In re Kenney,* 2007 WL 1412921 (Bankr.E.D.Va., May 10, 2007); *In re Pool,* 351 B.R. 747 (Bankr.D.Or.2006); *In re Moon,* 359 B.R. 329 (Bankr.N.D.Ala.2007); *In re Feddersen,* 355 B.R. 738 (Bankr.S.D.Ill.2006); *In re Maggett,* 2006 WL 3478991 (Bankr.D.Neb., Oct.19, 2006); *In re Bayless,* 2006 WL 2982101 (Bankr.E.D.Tenn., Oct.18, 2006); *In re Evans,* 349 B.R. 498 (Bankr.E.D.Mich.2006); *In re Nicely,* 349 B.R. 600 (Bankr.W.D.Mo.2006); *In re Sparks,* 346 B.R. 767 (Bankr.S.D.Ohio 2006); *In re Brown,* 346 B.R. 868 (Bankr. N.D.Fla.2006); *In re Long,* 2006 WL 2090246 (Bankr.E.D.Tenn., March 13, 2006); *In re Durham,* 361 B.R. 206 (Bankr.D.Utah 2006); *In re Steakley,* 360 B.R. 769 (Bankr.E.D.Tenn. 2007); *In re Roth,* 2007 WL 1385383 (Bankr. N.D.Ind., May 4, 2007); *CitiFinancial Auto Corp. v. Price (In re Price),* 366 B.R. 389 (Bankr.M.D.Pa.2007); *In re Bivins,* 2007 WL 624385 (Bankr.M.D.Ga., Feb.23, 2007); *In re Stevens,* 368 B.R. 5 (Bankr.D.Neb.2007); *In re Doddroe,* 2007 WL 1310177 (Bankr. N.D.Ohio, May 3, 2007); *In re Keck,* 2007 WL 470349 (Bankr.E.D.Tenn., Feb.9, 2007); *In re Rice,* 2007 WL 541809 (Bankr.E.D.Tenn., Feb.16, 2007); *In re Holland,* 2007 WL 1119937 (Bankr.E.D.Tenn., Apr.13, 2007); *In re Harrell,* 2007 WL 708569 (Bankr. E.D.Tenn., Mar.5, 2007); *In re Gable,* 2007 WL 708573 (Bankr.E.D.Tenn., Mar.5, 2007); *In re Long,* 2006 WL 2090246 (Bankr. E.D.Tenn., March 13, 2006); *see also In re Petrocci,* 370 B.R. 489, 2007 WL 1813217 (Bankr.N.D.N.Y., June 20, 2007) (in *dicta,* court agrees with *In re Pinti,* 363 B.R. 369 (Bankr.S.D.N.Y.2007), although surrender was not an issue in the case).

7. The *Pinti* court stated:

When an undersecured creditor seeks a deficiency claim against a debtor in bankruptcy, it should be emphasized that, however the deficiency might be calculated under state law, the creditor is seeking allowance of the deficiency as a bankruptcy claim. The Bankruptcy Code, and not state law, determines whether and to what extent such claim should be allowed in the bankruptcy estate.

*Id.* at 380.

of any deficiency claim is to assume the conclusion being reached. We will not do that.

The minority line of cases holds that the right to an unsecured deficiency claim is determined by state law and not by section 506(a), so its inapplicability is meaningless with respect to section 1325(a)(5)(C) surrenders of 910 vehicles. While we agree with the minority, and in particular with the reasoning of *Particka* and *In re Wright*, 492 F.3d 829 (7th Cir.2007), we take a slightly different route to the same result. We work our way directly through the statutory provisions and come to the conclusion that Wells Fargo cannot be denied whatever deficiency claim it may ultimately prove.[8]

We learn from the hanging paragraph that section 506 does not apply to 910 claims described in section 1325(a)(5). Section 1325 is entitled "Confirmation of plan", and the opening phrase of section 1325(a) directs that "the court shall confirm a plan if. . . ." Then section 1325(a)(5) lists the only three ways allowed secured claims (here allowed 910 claims) may be "provided for by the plan." First, the treatment may be as agreed to by the holder of the claim (section 1325(a)(5)(A)); second, the lien may be retained by the creditor and the claim paid in full (section 1325(a)(5)(B))[9]; and third (our case), "the debtor surrenders the [910 vehicle] to the [910 creditor]." These provisions are operative and effective only upon confirmation of a plan, and have no purpose apart from a plan. They do not apply to pre-petition or post-petition, pre-confirmation surrenders, nor to post-confirmation surrenders. Section 1325(a)(5) is not a tool generally available any time to chapter 13 debtors to use when they please, such as would be the case with section 363 sale powers, made available through section 1303, or certain section 364 borrowing rights, made available to chapter 13 debtors engaged in business through section 1304.

Thus, as of confirmation of her amended plan, Debtor will treat the secured claim of Wells Fargo by surrender of the Aztec; therefore, for plan purposes, the estate will

---

8. It is paradoxical, perhaps, that many courts coming down on both sides of this important issue do so from the same starting point in their analysis, viz., that the hanging paragraph is not ambiguous. From there they reach diametrically opposed conclusions. A cynic might say that such a division proves the ambiguity. So be it. But we reject the approach some courts have taken in applying a "what's good for the goose is good for the gander" principle of statutory construction. *See, e.g., Quick*, 371 B.R. at 463 n. 10 ("Thus, it may well be that elimination of deficiency claims was intended to offset, on behalf of 910 debtors, the benefit conferred upon secured 910 creditors by eliminating the cram down option.") Nonetheless, we salute the court in *Turkowitch* for its sardonic sense of humor:

Ironically, the same provision that prevents the debtor from lien stripping and reducing a creditor's allowed secured claim prevents the creditor from claiming a deficiency against the debtor. While this new language may not operate to hoist the 910-creditor by his own petard, surely the creditor may be said to hang by his own paragraph.

*Turkowitch*, 355 B.R. at 126 n. 2.

9. The hanging paragraph has been referred to as the "Anti–Cramdown Paragraph" with reference to section 1325(a)(5)(B) (*Ezell*, 338 B.R. at 333), as one of its functions "is to prevent 'bifurcation' or 'stripping' of certain undersecured creditors' claims (usually where the collateral consists of automobiles newer than 2 1/2 years old) into secured and unsecured portions when the debtor elects to retain the collateral as part of a Chapter 13 plan." *Pinti*, 363 B.R. at 371. *Pinti* then goes one step further and coins the phrase "Anti–Deficiency Paragraph" to describe the effect on section 1325(a)(5)(C). *Id.* at 375.

no longer include the Aztec.[10] Stated otherwise, three things will occur simultaneously (confirmation, surrender, and unavailability of section 506), after which there will be no "allowed claim of a creditor secured by a lien on property in which the estate has an interest." 11 U.S.C. § 506(a)(1). But after surrender the estate has no interest in the vehicle, so section 506 has no impact on the surrender option of section 1325(a)(5)(C). Therefore to render section 506 inapplicable is of no consequence to plan confirmation. This follows logically from a plain reading of the statute because the estate no longer (as of the moment of confirmation and surrender) has an interest in the Aztec.

We suspect, but do not decide,[11] that there is one very important reason why Congress chose to suspend section 506 from its application to section 1325(a)(5)(C)'s surrender option. BAPCPA added new subparagraph 506(a)(2) (quoted above) that requires replacement value to be applied to collateral secured by personal property of an individual in chapter 7 or 13. This is described in the legislative history as one of the protections for secured creditors. *Pinti*, 363 B.R. at 384, *quoting* H.R. Rep. 109–31 at 17, U.S.Code Cong. & Admin. News 2005, pp. 88, 103. Section 506(a)(2)'s applicability is not limited to the retention, anti-cramdown

option of section 1325(a)(5)(B). Thus, without the hanging paragraph, upon surrender of a 910 vehicle, the "replacement value" would be used to reduce the total amount owed to the 910 creditor, rather than the amount actually realized on liquidation. That would inevitably lead to a smaller deficiency claim. By rendering section 506(a)(2) unavailable following surrender, there is no artificially inflated reduction of the total debt, but only the actual reduction realized following foreclosure and sale in accordance with state law.

■ As noted above, we also agree with the result reached in *Wright*, the only published case on this issue to date by a court of appeal. It reaches the same result, but with a slightly abbreviated analysis from ours. There, the Seventh Circuit Court of Appeals held that deficiency claims are preserved upon surrender of 910 vehicles. "[B]y knocking out [section] 506, the hanging paragraph leaves the parties to their contractual entitlements." *Wright*, 492 F.3d at 832. While section 506 does divide claims into secured and unsecured components, "it is a mistake to assume, as the majority of bankruptcy courts have done, that [section] 506 is the *only* source of authority for a deficiency judgment when the collateral is insufficient." *Id.* (emphasis in original).

---

**10.** We recognize that many of the courts in the majority disagree with the idea that the estate has no continuing interest, particularly in *Pinti* and *Kenney*. The court in *Pinti* states that the debtor's estate will retain an interest in any surplus proceeds from a sale of the 910 vehicle, that the debtor retains an interest in redeeming the 910 vehicle after surrender and until disposal of the vehicle by the creditor and that the estate "will continue to have an 'interest' in the valuation of the collateral for the purposes of proposing and confirming a plan of reorganization." *Pinti*, 363 B.R. at 382–83; *see also*, *Kenney*, 2007 WL 1412921 at *10–11. Whatever interest may remain in the surrendered vehicle itself or any surplus

or potential right of redemption is of no consequence to our analysis because once the plan has been confirmed, property revests in the Debtor under section 1327(b) and the Revestment of Property paragraph of her amended plan, and will no longer be property of the estate. We therefore agree with the *Particka* court that section 506 does not apply.

**11.** The parties did not brief this issue and it is unnecessary to our decision. We mention it to raise another of the mysteries of the hanging paragraph; we are not aware of any court that has mentioned this possibility.

Citing to the Supreme Court's recent decision in *Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.,* —— U.S. ——, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007), the court noted that state law determines rights and obligations when the Code is silent. The Seventh Circuit took the position that the Code is silent on how to treat a deficiency, and thus state law and the parties' contractual obligations govern. Noting that the majority position resulted in an anomaly, the court emphasized that the Code does not explicitly erase deficiencies:

> If the Wrights had surrendered their car the day before filing for bankruptcy, the creditor would have been entitled to treat any shortfall in the collateral's value as an unsecured debt. It is hard to see why the result should be different if the debtors surrender the collateral the day after filing for bankruptcy when, given the hanging paragraph, no operative section of the Bankruptcy Code contains any contrary rule.

*Wright,* 492 F.3d at 832.[12] The Seventh Circuit acknowledged that section 506 governs secured claims in bankruptcy, but stated that "the question at hand is what happens when [section] 506 does not apply." The answer, according to *Wright,* is found in the parties' contract to the extent the deal is enforceable under state law. *Id.* at at 832–33, citing *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

We take another message from *Travelers.* That is, we must find a basis in section 502 to disallow a claim, and absent such basis, we must allow it. *Travelers,* 127 S.Ct. at 1206 ("we generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed" under section 502). Wells Fargo's deficiency claim, if any, will come from state law after it disposes of the Aztec. We have no idea whether there will be a deficiency, but if there is, then unless there is something in section 502 to disallow it, it will survive as a valid unsecured claim in Debtor's chapter 13 case. *Id.* (where no provision of the Bankruptcy Code expressly and clearly disallows a particular type of claim generally recognized under state law, that claim should be allowed); *see also Heath v. Am. Express Travel Related Servs. Co. (In re Heath),* 331 B.R. 424, 426 (9th Cir. BAP 2005) ("Section 502(b) sets forth the exclusive grounds for disallowance of claims, and Debtors have introduced no evidence or arguments ·to establish any of those grounds."). Nowhere in the hanging paragraph or elsewhere (especially section 502) do we find any express or clear basis to disallow Wells Fargo's deficiency claim.

In holding that any deficiency must be treated as an unsecured claim notwithstanding the hanging paragraph, the Seventh Circuit in *Wright* rejected an argument presented by NACBA in this appeal, that the entire debt must be unsecured[13] because section 506 is inapplicable and is

---

**12.** We might have one slight quibble with *Wright's* hypothetical. A debtor who surrenders a 910 vehicle one day after filing bankruptcy would obviously not be doing it pursuant to a confirmed plan, so the simultaneous events of confirmation, surrender and suspension of section 506 would not be present. Were the creditor to complete foreclosure before confirmation, its claim for any deficiency could only be unsecured.

**13.** At oral argument, we queried whether Wells Fargo contended that because section 506 was inapplicable, Debtor would be obligated to pay the entire amount of the 910 claim, including the unsecured deficiency amount. Counsel for Wells Fargo conceded what we understand to be correct (but do not decide): that Debtor need only recognize the deficiency as a general unsecured claim, to be treated as other similar claims under her plan.

the only mechanism for obtaining an allowed secured claim:

> This line of argument makes the same basic mistake as the debtors' position: it supposes that contracts and state law are irrelevant unless specifically implemented by the Bankruptcy Code. *Butner* holds that the presumption runs the other way: *rights under state law count in bankruptcy unless the Code says otherwise. Creditors don't need [section] 506 to create, allow, or recognize security interests, which rest on contracts (and the UCC) rather than federal law.* Section 502 tells bankruptcy courts to allow claims that stem from contractual debts; nothing in [section] 502 disfavors or curtails secured claims. Limitations, if any, depend on [section] 506, which the hanging paragraph makes inapplicable to purchase-money interests in personal motor vehicles granted during the 910 days preceding bankruptcy (and in other assets during the year before bankruptcy).

*Wright*, 492 F.3d at 832–33 (emphasis added).

We also find persuasive and sound the analysis by the bankruptcy court in *Particka* and we adopt its reasoning. There, the court conducted an extensive review of sections 506 and 1325, the claims allowance and valuation process and the cases addressing the hanging paragraph issue before concluding that a 910 creditor is entitled to its deficiency claim upon surrender and disposition of its collateral. *Particka*, 355 B.R. at 629. The court held that the hanging paragraph was unambiguous, but differed from the majority of cases by holding (as we have above) that a literal application of the paragraph does not wipe out the deficiency. *Id.* at 623.

The *Particka* court noted that the "hanging paragraph's declaration that [section] 506 no longer applies to 910 cred-

itors under [section] 1325(a)(5) only causes a change in the law to the extent that pre-BAPCPA [section] 506 ever had any application to [section] 1325(a)(5)." *Id.* at 623. The court indicated that pre-BAPCPA section 506(a) applied when collateral was retained by a debtor, but that it did not apply to surrendered or abandoned collateral because the estate did not have an interest in it. *Id.* at 624.

> Section 506 essentially provides a method of valuing collateral to determine the amount of an allowed secured claim when the estate has an interest in the property: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...." *If the estate has no interest in the property that secures a claim, there is no reason to use the valuation process of [section] 506 to determine the amount of the secured claim.* Once the estate has no interest in the property, a secured creditor is free to foreclose upon its security interest under applicable non-bankruptcy law and apply the proceeds of sale of the collateral to its claim. *The creditor, of course, still retains its right to an allowed unsecured deficiency claim against a debtor under [section] 502 of the Bankruptcy Code if the debtor remains liable for the deficiency under applicable non-bankruptcy law. In other words, the bifurcation process of [section] 506 does not, and never did, apply to determine a secured and unsecured portion of a secured creditor's allowed claim where the estate does not have an interest in the property securing such claim.*

*Id.* (emphasis added). Because the hanging paragraph "causes no change when a debtor surrenders a vehicle" under section

1325(a)(5)(C), the 910 secured creditor is still entitled to its deficiency after disposition of the collateral. *Id.* at 625.

The *Particka* court distinguished the majority line of cases by noting that they "seem to proceed from the incorrect assumption that it is only somehow because of [section] 506 that an under-secured 910 creditor has a right to pursue a deficiency claim." *Id.* Again noting that "the right to pursue a deficiency claim derives from the recourse nature of an obligation under non-bankruptcy law after disposition of collateral," the court emphasized that "[f]ar from somehow *creating* a deficiency claim for an undersecured creditor, [section] 506(a) merely *allocates* the undersecured creditor's claim into secured and unsecured portions when the estate has an interest in the property. By definition, 'surrender' terminates the estate's interest in the property, thereby rendering [section] 506(a) entirely inapplicable." *Id.* at 626 (emphasis in original). We would summarize that explanation a little differently: section 506 never had any applicability to surrendered collateral. Thus for the hanging paragraph to say the section does not apply simply states what has been and is the law.

The district courts that have published decisions on this issue agree with the analysis of *Particka*. In *Slocum v. Americredit Fin'l Servs., Inc. (In re Slocum)*, 2007 WL 1812629 (N.D.Ga., May 10, 2007), and *Silvers v. Wells Fargo Auto Finance (In re Silvers)*, 2007 WL 1812628 (N.D.Ga. 2007), the district court for the Northern District of Georgia concluded that the hanging paragraph and section 1325(a)(5)(C) do not permit a debtor to surrender a 910 vehicle in full satisfaction of the debt secured by the vehicle.

The court stated that section 506(a) did not apply because the estate did not retain an interest in the collateral upon surrender and by its terms, section 506(a) applies only to "an allowed claim of a creditor secured by a lien on property in which the estate has an interest." *Slocum*, 2007 WL 1812629 at *3, relying on *Particka*, 355 B.R. 616, and *Dupaco Community Credit Union v. Zehrung (In re Zehrung)*, 351 B.R. 675 (W.D.Wis.2006). Consequently, the language of the hanging paragraph is irrelevant and did not effect any change with respect to section 1325(a)(5)(C). The court also held that state law—not section 506—bifurcates a secured creditor's claim upon surrender, and that section 506 itself does not prohibit bifurcation of claims under state law. *Slocum*, 2007 WL 1812629 at *4 and *5.

In *Zehrung*, the district court for the Western District of Wisconsin likewise held that when a chapter 13 debtor surrenders collateral pursuant to section 1325(a)(5)(C), the 910 creditor is entitled to its state law right to liquidate the collateral and retain an unsecured claim for the balance due. The district court stated that the majority anti-deficiency cases

> ignore the fact that "allowed secured claim" in [section 1325(a)(5)] is used in the sense that the claim is allowed under [section] 502 and secured by some collateral, not in the [section] 506 sense of the term. *A creditor taking possession of collateral does not depend upon [section] 506 to determine the value of its unsecured claim.* Section 506 has application only when the estate retains an interest in the collateral, a circumstance which disappears with surrender. Rather, when collateral is surrendered pursuant to [section 1325(a)(5)(C) ] the amount of the remaining unsecured claim is determined by state law, uniform commercial code sections 9–610 to 9–624. [Citation omitted]. *The creditor's rights being unmodified by [section] 506, it is entitled to its state law*

*right to liquidate the collateral and retain an unsecured claim for the balance due.*

*Zehrung*, 351 B.R. at 678 (emphasis added). The *Zehrung* court noted that its interpretation is not only consistent with the language of the statute, but "has the additional advantage of being consistent with the intent of Congress in enacting the [section] 1325 amendments and with the ordinary expectations of borrowers and lenders." [14] *Id.*

We agree, but observe that this result could be undoing a subtle, unarticulated compromise between competing creditor interests which Congress may have intended in its wording of the hanging paragraph. Attempts to glean the intent of the hanging paragraph have been made by many courts, most recently and typically the district court in *General Motors Acceptance Corp. v. Peaslee*, 373 B.R. 252, 261–62 (W.D.N.Y.2007):

> The "hanging paragraph" itself and the above referenced cases clearly indicate the intent was to protect creditors from perceived abuses created by spendthrift debtors prior to petitioning for Chapter 13 relief. To be sure, there are other provisions in BAPCPA that streamlined the bankruptcy process and, in some cases, protected debtors but the particular provision at issue here, the so-called "hanging paragraph" of [section] 1325, was obviously intended to protect the interests of automobile dealers who provide financing for customers.

This interpretation of the intent of Congress may miss the mark. It is apparent that Congress intended to take away the right of debtors to reduce their secured obligations on retained 910 vehicles to the value of the vehicles (11 U.S.C § 1325(a)(5)(B)). The real question is whether Congress intended that, in return for protection from cramdown, 910 creditors who recover surrendered 910 vehicles have lost their right to a deficiency claim.

When a secured claim is not reduced to the value of the collateral, the claimant is given an advantage over other creditors. If the unsecured portion of a 910 claim must be paid in full, other unsecured claims may receive less or even nothing. It could be that the hanging paragraph was meant to be a compromise between these competing creditor classes. Congress may have intended that when a 910 vehicle is not surrendered the secured creditor gets an unfairly large share of the pot but when the 910 vehicle is surrendered it gets none of the pot, thereby resulting in rough fairness between divergent creditor interests. If this was the intent of Congress, it was not expressed clearly enough for us to ignore the effect of section 502.

## VI. CONCLUSION

We add our name to the growing list of courts that have found the hanging paragraph to have no effect on the deficiency

---

14. Most cases adopting the minority position cite *Particka* as well as *Zehrung* in support of their conclusions. While the cases holding that the hanging paragraph is not an anti-deficiency statute are still in the minority, many of the recent cases reflect an increasing willingness of courts to apply the reasoning of *Zehrung* and *Particka*. Other cases adopting the minority position include *In re Duke*, 345 B.R. 806 (Bankr.W.D.Ky.2006); *In re Hoffman*, 359 B.R. 163 (Bankr.E.D.Mich.2006);

*In re Morales*, 359 B.R. 211 (Bankr.N.D.Ill. 2007); *In re Blanco*, 363 B.R. 896 (Bankr. N.D.Ill.2007); *In re Clark*, 363 B.R. 492 (Bankr.N.D.Miss.2007); *In re Newberry*, 2007 WL 1308318 (Bankr.W.D.Tex., May 3, 2007); *In re Ruiz De Esparza*, 2007 WL 1394073 (Bankr.W.D.Tex., May 9, 2007); *In re Dominguez*, 2007 WL 1394158 (Bankr.W.D.Tex., May 11, 2007); and *In re Sarabia*, 2007 WL 1394388 (Bankr.W.D.Tex., May 9, 2007).

claims of 910 creditors who are the recipients of section 1325(a)(5)(C) surrenders. Accordingly, we REVERSE.