In re: HOWARD'S EXPRESS, INC., Debtor.

Teamsters National Freight Industry Negotiating Committee, the International Brotherhood of Teamsters, and its Affiliated Local Unions, Appellant,

v.

Howard's Express, Inc., Debtor–Appellee.

Docket No. 04–2306–BK.

United States Court of Appeals, Second Circuit.

Oct. 5, 2005.

Jill M. Hartley, Previant, Goldberg, Uelmen, Gratz, Miller & Brueggman, S.C., Milwaukee, WI, for Appellant.

PRESENT: Hon. CHESTER J. STRAUB, Hon. SONIA SOTOMAYOR, Circuit Judges, and Hon. GEORGE B. DANIELS, District Judge.*

**SUMMARY ORDER**

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED AND DECREED that the order of the district court is REVERSED and the order of the bankruptcy court is AFFIRMED.

Debtor-appellee Howard's Express, Inc. ("the Company") filed a petition under Chapter 11 of the bankruptcy code and moved for authorization to reject the collective bargaining agreement with its unionized employees pursuant to 11 U.S.C. § 1113. The bankruptcy court (Ninfo, J.) granted the motion. Appellant Teamsters National Freight Industry Negotiating

Committee and its affiliated local unions (collectively, "the Union") appealed that decision to the district court (Siragusa, J.), which dismissed its appeal as moot because the debtor's assets had been sold and the bankruptcy petition converted to a Chapter 7 proceeding. We assume the parties' familiarity with the facts and the issues on appeal.

By order dated September 15, 2005, we asked the Union to submit a letter by September 20, 2005, addressing the current status of the chapter 7 case, whether the estate had been liquidated, and whether the estate would have sufficient property subject to liquidation were the appeal resolved in its favor. By letter dated September 21, 2005, the Union replied that it "did not know the status of the Chapter 7 case or whether the estate has liquidated its assets." Nor did it know whether the estate had funds sufficient to pay its claims.

█ We are perturbed that despite having asked the Union for updated information on the status of the case, it failed to provide any. We are equally perturbed that counsel and the Union would proceed with an appeal without determining whether assets would be available to meet its claims. Nevertheless, we are empowered to take judicial notice of public filings and do so here. *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir.2003). The bankruptcy court docket indicates that the liquidation has not been completed and that preference actions remain to be tried. Because there may still be assets present to satisfy the claims of the Union's members, the district court erred in holding that the appeal was moot on the sole ground that

---

* The Honorable George B. Daniels, United States District Judge for the Southern District of New York, sitting by designation.

the bankruptcy petition had been converted into a Chapter 7 proceeding.

Although we generally do not consider claims not ruled on below, "we have the authority to decide issues that were argued before but not reached by the district court." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 90 (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124, 129, 129 n. 5 (2d Cir. 2002)). In light of our plenary review of bankruptcy appeals, we reach the merits here. *Resolution Trust Corp. v. Best Prods. Co., Inc. (In re Best Prods. Co., Inc.)*, 68 F.3d 26, 30 (2d Cir.1995).

■ Contrary to the Union's assertion, the bankruptcy court did not apply the wrong legal standard for determining that rejection of the collective bargaining agreement was appropriate. The Union seizes on the bankruptcy court's statement that "the Court cannot find that there is no likelihood of a successful Chapter 11 reorganization" to contend that it inverted the burden of proof. While we have stated that courts should "look[ ] into the debtor's ultimate future and estimat[e] what the debtor needs to attain financial health," we have not required the debtor to prove on its motion for rejection that it will ultimately achieve rehabilitation. *Truck Drivers Local 807 v. Carey Transp. Inc.*, 816 F.2d 82, 89 (2d Cir.1987) (noting that "[i]n making the decision whether to permit the debtor to reject its bargaining agreement, ... the court must consider whether rejection would *increase the likelihood* of successful reorganization") (emphasis supplied). Rather, the question is whether rejection will "permit the reorganization of the debtor." 11 U.S.C. § 1113(b)(1)(A). In any event, the bankruptcy court made clear that the Company had to establish its entitlement to rejection, and explicitly held that the "the Company ha[d] met its burden to demonstrate

that each of its proposed modifications to the Agreement, both economic and non-economic, are necessary to its business plan, survival and potential for a Chapter 11 reorganization."

■ Nor do we agree that the district court clearly erred in finding that the evidence permitted rejection of the contract. There was evidence in the record that the Company could return to profitability within a year. The bankruptcy court noted the testimony of the Company's consultant about its effort to cut its expenses and the statements of its secured lender that it had entered into a cash-collateral agreement on the theory that the Company could reorganize. Although the Union's view of the Company's financial prospects has been confirmed by subsequent events, at the time of the hearing, the Company proved that rejection of the collective bargaining agreement would increase the likelihood of a successful reorganization. We will not reverse that decision solely because it is now shown to be incorrect by hindsight.

■ The Union next contends that the bankruptcy court erred in determining that the proposed contract treated all parties fairly because it decreased the salaries and benefits of the unionized employees while increasing those of some managers. We have said that the fairness to all parties principle requires that "all sacrifice to a similar degree," *In re Century Brass Prods., Inc.*, 795 F.2d 265, 273 (2d Cir. 1986), but this does not mean that each employee must receive the same decrease in pay. *See Carey Transp. Inc.*, 816 F.2d at 90 (allowing a debtor to rely "on proof that managers and non-union employees are assuming increased responsibilities as a result of staff reductions without receiving commensurate salary increases"). The overall cuts to wages and benefits for union and non-union employees were approx-

imately equal,[1] and, while the increases to the officers' salaries are suspect, the bankruptcy court did not clearly err in finding that the proposed modifications to the collective bargaining agreement treated all parties fairly.

■ We also reject the Union's assertion that the Company did not provide it with all the relevant information because it did not receive the specific Pro Forma Income Statement relied upon by the debtor at the hearing on the motion for rejection nor the then-most recent financial information for April 2003. Section 1113(b)(1)(B) entitles the Union to "such relevant information as is necessary to evaluate the proposal" and the Union does not seriously argue, nor could it, that the failure to have these documents left it unable to evaluate the proposed offer.

■ The Union further contends that the rejection was improper because it included unnecessary non-economic provisions, such as the elimination of job security measures. A bankruptcy court must look at the total effect of the modifications to the collective bargaining agreement sought by the debtor when a union has rejected the debtor's proposal without good cause. *See N.Y. Typographical Union No. 6 v. Royal Composing Room, Inc. (In Re Royal Composing Room, Inc.)*, 848 F.2d 345, 348 (2d Cir.1988). "So long as the total quantum of savings is necessary under the *Carey Transportation* standard, the union may not prevent rejection by

belatedly attacking a specific element." *Id.* at 349. Here, the bankruptcy court found that the Union rejected the company's proposal without good cause and the Union does not challenge that on appeal. Given its argument that the Company had such severe financial problems that not even radical change would not stem its decline, the Union's challenge to particular provisions of the proposed contract modification is unavailing.

■ Finally, the Union contends that the bankruptcy court erred in permitting rejection because the Company had failed to satisfy its contractual obligations to pay into the employees' health, welfare and pension benefit funds at some time prior to filing for bankruptcy protection. The only evidence in the record of any breach of the collective bargaining agreement cited by the Union is a statement by its counsel that "I think the pension hadn't been paid since possibly December of 2002. I apologize if I'm not entirely accurate on that. And health and welfare I think dates back to January of 2003." The bankruptcy court responded that "[w]e don't have evidence of that." The bankruptcy court's following comment that "[t]he debtor won't deny that" presumably meant that it assumed that the Company would not object to whatever evidence the Union provided. The record does not reflect that the Union provided any specific evidence of the alleged breach at the hearing or after.[2] Given the lack of evidence

---

**1.** The Company projected that the total salaries of its officers would increase from $69,712 to $140,000, its maintenance manager from $51,628 to $69,992, and of its maintenance supervisor from $34,965 to $36,400. By contrast, the total amounts paid to union staff would decrease. Overall, however, the Company projected that non-union wages would comprise 55.30 percent of 2000 amounts and union wages 54.23 percent of 2000 amounts. Similarly, total benefits for

non-union workers were projected to decrease from 9.66 percent of wages in 2000 to 5.93 percent of current wages, and total benefits for union workers to decrease from 36.74 percent of wages in 2000 to 13.80 percent.

**2.** The only other evidence in the record on this issue does not shed light on the alleged breach or its scope. On cross-examination, counsel for the Union asked Nicholas Ferrari, the expert for the Company who put together

before the bankruptcy court on the Union's complex argument that the Company's failure to cure its breach of the collective bargaining agreement was a *per se* bar to rejection of the contract, an issue that this Court has not clearly decided in circumstances such as these, the bankruptcy court did not err in failing to consider it.

We have considered all of the Union's arguments and find them to be without merit. For all of these reasons, we REVERSE the decision of the district court dismissing the appeal as moot and AFFIRM the decision of the bankruptcy court.