# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-1483

IN THE MATTER OF:

CRAIG WRIGHT and LACHONE P. GILES-WRIGHT,

*Debtors-Appellants.*

SANTANDER CONSUMER USA INC.,

*Creditor-Appellee.*

———————

Appeal from the United States Bankruptcy Court
for the Northern District of Illinois, Eastern Division.
No. 06 B 13363—**A. Benjamin Goldgar**, *Bankruptcy Judge.*

———————

ARGUED JUNE 5, 2007—DECIDED JULY 3, 2007

———————

Before EASTERBROOK, *Chief Judge*, and MANION and WOOD, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Bankruptcy judges across the nation have divided over the effect of the unnumbered hanging paragraph that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 added to §1325(a) of the Bankruptcy Code, 11 U.S.C. §1325(a). Section 1325, part of Chapter 13, specifies the circumstances under which a consumer's plan of repayment can be confirmed. The hanging paragraph says that, for the purpose of a Chapter 13 plan, §506 of the Code, 11 U.S.C. §506, does not apply to certain secured loans.

Section 506(a) divides loans into secured and unsecured portions; the unsecured portion is the amount by which the debt exceeds the current value of the collateral. In a Chapter 13 bankruptcy, consumers may retain the collateral (despite contractual provisions entitling creditors to repossess) by making monthly payments that the judge deems equal to the market value of the asset, with a rate of interest that the judge will set (rather than the contractual rate). See *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997); *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004). This procedure is known as a "cramdown"—the court crams down the creditor's throat the substitution of money for the collateral, a situation that creditors usually oppose because the court may underestimate the collateral's market value and the appropriate interest rate, and the debtor may fail to make all promised payments, so that the payment stream falls short of the collateral's full value. (The effect is asymmetric: if a judge overestimates the collateral's value or the interest rate, the debtor will surrender the asset and the creditor will realize no more than the market price. When the judge errs in the debtor's favor, however, the debtor keeps the asset and pays at the reduced rate. Creditors systematically lose from this asymmetry—and in the long run solvent borrowers must pay extra to make up for creditors' anticipated loss in bankruptcy.)

The question we must decide is what happens when, as a result of the hanging paragraph, §506 vanishes from the picture. The majority view among bankruptcy judges is that, with §506(a) gone, creditors cannot divide their loans into secured and unsecured components. Because §1325(a)(5)(C) allows a debtor to surrender the collateral to the lender, it follows (on this view) that surrender fully satisfies the borrower's obligations. If this is so, then many secured loans have been rendered nonre-

course, no matter what the contract provides. See, e.g., *In re Payne*, 347 B.R. 278 (Bankr. S.D. Ohio 2006); *In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006); *In re Kenney*, 2007 Bankr. LEXIS 1646 at *16-17 (Bankr. E.D. Va. May 11, 2007) (collecting cases). The minority view is that Article 9 of the Uniform Commercial Code plus the law of contracts entitle the creditor to an unsecured deficiency judgment after surrender of the collateral, unless the contract itself provides that the loan is without recourse against the borrower. See, e.g., *In re Particka*, 355 B.R. 616 (Bankr. E.D. Mich. 2006); *In re Zehrung*, 351 B.R. 675 (W.D. Wis. 2006). That unsecured balance must be treated the same as other unsecured debts under the Chapter 13 plan.

Craig Wright and LaChone P. Giles-Wright, debtors in this proceeding, owe more on their purchase-money automobile loan than the car is worth. Because the purchase occurred within 910 days of the bankruptcy's commencement, the hanging paragraph in §1325(a)(5) applies. This paragraph reads:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

Debtors proposed a plan that would surrender the car to the creditor and pay nothing on account of the difference between the loan's balance and the collateral's market value. After taking the minority position on the effect of

bypassing §506, the bankruptcy judge declined to approve the Chapter 13 plan, because debtors did not propose to pay any portion of the shortfall.

Normally the next step would be an appeal to the district court, followed by an appeal to this court once a final decision had been rendered. But the 2005 Act amends 28 U.S.C. §158 to allow a direct appeal from a bankruptcy court to the court of appeals, bypassing the expense and delay of litigation before a district judge. Section 158(d)(2)(A) now provides:

> The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that—
>
> > (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
> >
> > (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
> >
> > (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken; and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

The bankruptcy judge certified that this litigation satisfies both subparagraphs (i) and (ii). A motions panel of this court accepted the appeal because the issue not only has divided the bankruptcy courts but also arises in a large fraction of all consumer bankruptcy proceedings. A clear answer is needed—yet this issue appears to be "stuck" in the bankruptcy courts. No court of appeals has addressed the subject, and few district judges have done so. Lower litigation costs for thousands of debtors and creditors may be achieved by expediting appellate consideration of this case.

Like the bankruptcy court, we think that, by knocking out §506, the hanging paragraph leaves the parties to their contractual entitlements. True enough, §506(a) divides claims into secured and unsecured components. (Section 506 does other things as well, see *Dewsnup v. Timm*, 502 U.S. 410 (1992), but these have no bearing on the question at hand.) Yet it is a mistake to assume, as the majority of bankruptcy courts have done, that §506 is the *only* source of authority for a deficiency judgment when the collateral is insufficient. The Supreme Court held in *Butner v. United States*, 440 U.S. 48 (1979), that state law determines rights and obligations when the Code does not supply a federal rule. See also, e.g., *Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.*, 127 S. Ct. 1199 (2007); *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15 (2000).

The contract between the Wrights and their lender is explicit: If the debt is not paid, the collateral may be seized and sold. Creditor "must account to Buyer for any surplus. Buyer shall be liable for any deficiency." In other words, the contract creates an ordinary secured loan with recourse against the borrower. Just in case there were doubt, the contract provides that the parties enjoy all of their rights under the Uniform Commercial Code. Section

9-615(d)(2) of the UCC, enacted in Illinois as 810 ILCS 5/9-615(d)(2), provides that the obligor must satisfy any deficiency if the collateral's value is insufficient to cover the amount due.

If the Wrights had surrendered their car the day before filing for bankruptcy, the creditor would have been entitled to treat any shortfall in the collateral's value as an unsecured debt. It is hard to see why the result should be different if the debtors surrender the collateral the day after filing for bankruptcy when, given the hanging paragraph, no operative section of the Bankruptcy Code contains any contrary rule. Section 306(b) of the 2005 Act, Pub. L. 109-8, 119 Stat. 23, 80 (Apr. 20, 2005), which enacted the hanging paragraph, is captioned "Restoring the Foundation for Secured Credit". This implies replacing a contract-defeating provision such as §506 (which allows judges rather than the market to value the collateral and set an interest rate, and may prevent creditors from repossessing) with the agreement freely negotiated between debtor and creditor. Debtors do not offer any argument that "the Foundation for Secured Credit" could be "restored" by making all purchase-money secured loans non-recourse; they do not argue that non-recourse lending is common in consumer transactions, and it is hard to imagine that Congress took such an indirect means of making non-recourse lending *compulsory*.

Appearing as *amicus curiae*, the National Association of Consumer Bankruptcy Attorneys makes the bold argument that loans covered by the hanging paragraph cannot be treated as secured in any respect. Only §506 provides for an "allowed secured claim," *amicus* insists, so the entire debt must be unsecured. This also would imply that a lender is not entitled to any post-petition interest. *Amicus* recognizes that §502 rather than §506 determines whether a claim should be "allowed" but insists that only §506 permits an "allowed" claim to be a "secured" one.

This line of argument makes the same basic mistake as the debtors' position: it supposes that contracts and state law are irrelevant unless specifically implemented by the Bankruptcy Code. *Butner* holds that the presumption runs the other way: rights under state law count in bankruptcy unless the Code says otherwise. Creditors don't need §506 to create, allow, or recognize security interests, which rest on contracts (and the UCC) rather than federal law. Section 502 tells bankruptcy courts to allow claims that stem from contractual debts; nothing in §502 disfavors or curtails secured claims. Limitations, if any, depend on §506, which the hanging paragraph makes inapplicable to purchase-money interests in personal motor vehicles granted during the 910 days preceding bankruptcy (and in other assets during the year before bankruptcy).

Both the debtors and the *amicus curiae* observe that many decisions, of which *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 238-39 (1989), is a good example, state that §506 governs the treatment of secured claims in bankruptcy. No one doubts this, but the question at hand is what happens when §506 does not apply. The fallback under *Butner* is the parties' contract (to the extent the deal is enforceable under state law), rather than non-recourse secured debt (the Wrights' position) or no security interest (the *amicus curiae*'s position). And there is no debate about how the parties' contract works: the secured lender is entitled to an (unsecured) deficiency judgment for the difference between the value of the collateral and the balance on the loan.

By surrendering the car, debtors gave their creditor the full market value of the collateral. Any shortfall must be treated as an unsecured debt. It need not be paid in full, any more than the Wrights' other unsecured debts, but it can't be written off *in toto* while other unsecured creditors are paid some fraction of their entitlements.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*