FILED
United States Court of Appeals
Tenth Circuit

May 19, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

———————————

In re: JOHN JASON BALLARD;
SUMMER MICHELLE BALLARD,
formerly known as Summer Ray; and
MICHAEL JUSTIN QUICK, also
known as Justin Quick,

      Debtors,

------------------------

DAIMLERCHRYSLER FINANCIAL
SERVICES AMERICAS LLC,
successor by merger to
DaimlerChrysler Services North
America LLC,

      Appellant,

        v.

JOHN JASON BALLARD; SUMMER
MICHELLE BALLARD, and
MICHAEL JUSTIN QUICK,

      Appellees.

------------------------

WELLS FARGO BANK, N.A.;
GMAC, LLC; TOYOTA MOTOR
CREDIT CORPORATION; FORD
MOTOR CREDIT COMPANY, LLC;
NUVELL CREDIT COMPANY LLC;
NUVELL NATIONAL AUTO
FINANCE LLC; AMERICAN

Nos. 07-5109 and 07-5112

SUZUKI FINANCIAL SERVICES
COMPANY LLC; NISSAN MOTOR
ACCEPTANCE CORP.; BANK OF
AMERICA, N.A.; AMERICAN
HONDA FINANCE CORPORATION;
AMERICREDIT FINANCIAL,
SERVICES, INC; AND JPMORGAN
CHASE BANK, N.A.,

Amicus Curiae.

---

**APPEAL FROM THE UNITED STATES BANKRUPTCY PANEL
OF THE TENTH CIRCUIT
BAP Nos. NO-07-025 and NO-07-026**

---

Layla Dougherty, Love, Beal & Nixon, P.C., Oklahoma City, Oklahoma, and
Stephen L. DeGiusti, Crowe & Dunlevy, Oklahoma City, Oklahoma, appearing
for Appellant.

J. Scott McWilliams, J. Scott McWilliams, P.C., Tulsa, Oklahoma, appearing for
Appellee.

---

Before **TACHA**, **EBEL**, and **McCONNELL**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

Appellant DaimlerChrysler Financial Services Americas LLC

("DaimlerChrysler") objected to the confirmation of debtors' plans in two Chapter

13 bankruptcy proceedings. Because the two proceedings involve the same legal

issue, the bankruptcy court consolidated argument and overruled

DaimlerChrysler's objections. The Bankruptcy Appellate Panel ("BAP")

affirmed. We also granted the parties' request for consolidated argument, and exercising jurisdiction under 28 U.S.C. § 158(d), we REVERSE the judgment of the BAP and remand both proceedings to the bankruptcy court.

## I. BACKGROUND

This is an appeal from core proceedings in two Chapter 13 bankruptcies: the cases of Michael Justin Quick and John Jason and Summer Michelle Ballard. The relevant facts are the same in both cases. The debtors purchased vehicles for their personal use less than 910 days before they filed bankruptcy petitions under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301–1330. To finance the vehicles, the debtors entered into retail installment contracts that were eventually assigned to DaimlerChrysler. Under these contracts, DaimlerChrysler acquired purchase money security interests in both vehicles. When the debtors filed for bankruptcy, each vehicle was worth less than the balance due under the contract. In both cases, DaimlerChrysler filed a proof of claim for the balance,[1] and the debtors did not object to the claims as filed. Rather, in their Chapter 13 plans, both debtors proposed to surrender the vehicle in full satisfaction of DaimlerChrysler's claim, that is, in satisfaction of the entire amount owed to DaimlerChrysler. DaimlerChrysler timely objected to the confirmation of both plans, arguing that surrendering the vehicle would not fully satisfy the claim, and

---

[1]DaimlerChrysler filed a secured claim of $19,712.84 in the Quick case and $10,614.51 in the Ballard case.

it may therefore assert an unsecured claim based on state law for any deficiency following liquidation.

Because the bankruptcy court concluded that federal law does not allow a deficiency claim under these circumstances, it overruled DaimlerChrysler's objection and confirmed the plan in both proceedings. The court also entered an order staying plan distributions to general, nonpriority unsecured creditors pending resolution of the parties' appeal to the BAP. The BAP subsequently affirmed the bankruptcy court's judgment and entered an order in both appeals staying its own judgment and mandate pending resolution of the appeal to this Court. Although this is an appeal from a BAP decision, we independently review the decision of the bankruptcy court, reviewing the court's factual findings for clear error and its legal conclusions de novo. *See In re Kuhnel*, 495 F.3d 1177, 1179–80 (10th Cir. 2007). As we explain below, because we hold that federal law does not preclude DaimlerChrysler from filing an unsecured deficiency claim based on state law, we reverse the BAP's judgment and remand both proceedings to the bankruptcy court.

## II. DISCUSSION

A.    The Question Presented by the "Hanging Paragraph"

This appeal presents a single legal question: whether a Chapter 13 debtor's surrender of a "910 vehicle" (i.e., a vehicle the debtor purchased within the 910 days preceding his bankruptcy petition) fully satisfies a creditor's claim secured

-4-

by the vehicle and prevents the creditor from filing an unsecured claim for the deficiency based on state law. To answer this question, we must interpret two provisions of the Bankruptcy Code, 11 U.S.C. § 1325(a)(5) and § 506(a), in light of an unnumbered paragraph added to § 1325(a) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Section 1325(a)(5) specifies the conditions for confirmation of a debtor's plan "with respect to each allowed secured claim provided for by the plan." Under § 1325(a)(5), a debtor seeking confirmation of a plan has three options regarding a creditor's allowed secured claim: (1) obtain the creditor's acceptance of the plan; (2) keep the collateral securing the claim and make payments equaling the present value of the claim; or (3) surrender the collateral securing the claim to the creditor. § 1325(a)(5)(A)–(C). Generally, a debtor exercising the retention option under § 1325(a)(5)(B), also known as "cram down," keeps the collateral securing the debt and satisfies the debt by making monthly payments equal to the present value of the collateral, rather than the remaining balance on the loan.

The "cram down" is the result of § 1325(a)(B)(ii)'s requirement that the debtor pay the present value of the creditor's claim and § 506(a)'s provision for judicial valuation of claims secured by collateral. Section 506(a) specifies how a claim secured by a lien on property should be valued:

An allowed claim of a creditor secured by a lien on property in which

-5-

the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

Thus, under § 506(a), a claim secured by a lien is separated, or bifurcated, into a secured portion reflecting the value of the property and an unsecured portion reflecting the remaining debt or deficiency. When a claim is bifurcated under § 506(a), the debtor may retain the collateral and meet the requirements of § 1325(a)(5)(B) by making payments only on the secured portion of the bifurcated claim. As a result of this process, an undersecured creditor may seek payment of a deficiency only as an unsecured creditor.[2]

Since BAPCPA, however, the hanging paragraph has prevented the valuation of certain claims under § 506(a).[3] Most salient for purposes of this

_____

[2]The Supreme Court has described the "cram down" option as follows: "Under the cram down option, the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim, *see* § 1325(a)(5)(B)(i), and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the . . . collateral, *see* § 1325(a)(5)(B)(ii). The value of the collateral is governed by § 506(a) of the Code." *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 957 (1997); s*ee also Capital One Auto Fin. v. Osborn*, 515 F.3d 817, 820 (8th Cir. 2008) (describing the option).

[3]The hanging paragraph provides in relevant part:

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the

(continued...)

-6-

case, § 506 no longer applies to a "910 car claim," that is, a claim secured by a 910 vehicle. Both the bankruptcy court and the BAP acknowledged that this change in law prevents a debtor from engaging in the "cram down" when electing to retain the vehicle. Because the valuation provision of § 506(a) no longer applies to bifurcate the creditor's claim into secured and unsecured portions, a debtor who keeps the 910 vehicle under § 1325(a)(5)(B) must now pay the entire claim as filed. In other words, a 910 car claim under § 1325(a)(5)(B) is treated as fully secured.

Here, however, the debtors surrendered the vehicles under § 1325(a)(5)(C). Because a 910 car claim is treated as fully secured when a debtor retains the vehicle, the bankruptcy court and the BAP reasoned that it must also be treated as fully secured when the debtor surrenders the vehicle. Following this logic, surrender fully satisfies the claim and precludes an unsecured claim for a deficiency.

Although courts agree that the hanging paragraph now prevents the application of § 506 to 910 car claims under § 1325(a)(5), they have reached different conclusions concerning the effect of this change on cases involving the

[3](...continued)
filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor.

11 U.S.C. § 1325(a).

surrender of a 910 vehicle. In the present case, the bankruptcy court and the BAP adopted the majority view among bankruptcy courts; both courts concluded that, because a 910 car claim is no longer subject to bifurcation into secured and unsecured claims under § 506(a), the debtor's surrender of the vehicle under §1325(a)(5)(C) satisfies the entire claim, and the creditor may not pursue an unsecured claim, based on state law, to recover a deficiency. *See, e.g.*, *In re Moon*, 359 B.R. 329, 333 (Bankr. N.D. Ala. 2007); *see also In re Rodriguez*, 375 B.R. 535, 542 n.6 (9th Cir. BAP 2007) (listing cases in which bankruptcy courts have adopted this view). Conversely, a growing number of courts, including the only circuit courts to address this issue, have held that a creditor may pursue an unsecured deficiency claim when the debtor surrenders the vehicle. *See In re Long*, 519 F.3d 288, 298, 299–301 (6th Cir. 2008); *Capital One Auto Fin. v. Osborn*, 515 F.3d 817, 822–23 (8th Cir. 2008); *In re Wright*, 492 F.3d 829, 832–33 (7th Cir. 2007); *see also In re Rodriguez*, 375 B.R. at 548–49 (rejecting majority view adopted by bankruptcy courts).

B.    Statutory Analysis

We join the growing number of courts adopting the latter view and hold that, by making § 506 inapplicable to 910 car claims, the hanging paragraph does not abrogate a creditor's right to assert a deficiency claim authorized by state law. Like the Seventh and Eighth Circuits, we reach this conclusion based on the plain language of the statute. *See Osborn*, 515 F.3d at 821; *In re Wright*, 492 F.3d at

832. Because the statutory language is clear, we need not look beyond it. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (noting that judicial inquiry into the meaning of a statute should end when the language is plain).

We begin with the presumption "that claims under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 127 S. Ct. 1199, 1206 (2007). Neither the debtors nor the bankruptcy court has identified any provision in the Bankruptcy Code "expressly disallowing" an unsecured deficiency claim based on state law. Section 1325(a) contains no language invalidating a creditor's claim for an unsecured deficiency under state law. And nothing in § 502, the provision governing the allowance of claims, excludes or limits such a claim. *See Osborn*, 515 F.3d at 822 ("As nothing in § 502 or § 1325 denies a creditor an unsecured deficiency claim, [the creditor] is entitled to one."). Furthermore, although § 506 governs the treatment of most secured claims, it does not follow that its inapplicability to 910 car claims invalidates creditors' rights under state law. As the Seventh Circuit recently explained, the question is not what happens when § 506 applies, but "what happens when § 506 does not apply." *In re Wright*, 492 F.3d at 833.[4]

---

[4]An argument exists that the valuation method under § 506(a) never applies to surrendered collateral of any kind under § 1325(a)(5)(C) because § 506(a) only
(continued...)

The BAP and bankruptcy court erroneously concluded that DaimlerChrysler could not pursue an unsecured claim because both courts understood § 506(a), rather than state law, to be the only source of DaimlerChrysler's deficiency claim. Before the addition of the hanging paragraph, the bifurcation process under § 506(a) separated a claim secured by a 910 vehicle into secured and unsecured claims. But § 506(a) is certainly not the only means by which an undersecured creditor may assert an unsecured deficiency claim. *See Wright*, 492 F.3d at 832 ("[I]t is a mistake to assume, as the majority of bankruptcy courts have done, that § 506 is the *only* source of authority for a deficiency judgment when the collateral is insufficient."). As the Supreme Court has emphasized, unless the Bankruptcy Code says otherwise, the source of a secured or unsecured claim is state law; this follows from the "settled principle that creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Travelers Cas. & Sur. Co.*, 127 S. Ct. at 1204–05 (quotation and

---

[4](...continued)
applies when the *estate has an interest* in the collateral, and when a debtor surrenders the collateral, that interest disappears. *See In re Long*, 519 F.3d at 300 (Cox, J., concurring in the judgment). But as the bankruptcy court explained, under Oklahoma law, the debtor has the right to redeem collateral repossessed by a creditor before certain conditions occur. *See* Okla. Stat. Ann. tit. 12A § 1-9-623(a), (c); *see also* U.C.C. § 9-623(a), (c). This suggests that, under some circumstances, the debtor (and therefore the estate) may have a continuing interest in surrendered collateral. We need not resolve this larger issue, however, because the hanging paragraph clearly prevents the application of § 506 to the kind of claim at issue in this case.

alteration omitted); *see also Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329–30 (1993) (looking to mortgage contracts and state law to define a mortgage lender's "rights" when the Bankruptcy Code did not define the term "rights"). In the absence of a contrary federal rule, a bankruptcy court should ensure that a creditor's rights are protected in accordance with state law. *Butner v. United States*, 440 U.S. 48, 55–56 (1979).

The Bankruptcy Code does not contain a contrary federal rule or otherwise qualify a creditor's state-law entitlement to a deficiency claim. By removing 910 car claims from the valuation process under § 506(a), the hanging paragraph does not prohibit the bifurcation of 910 car claims into secured and unsecured claims; it "simply removes the bankruptcy code's method of bifurcation." *Osborn*, 515 F.3d at 822; *see also Rash*, 520 U.S. at 957 (explaining that § 506(a) governs the *value* of an allowed secured claim). As the Seventh Circuit has explained, creditors need not rely on § 506 "to create, allow, or recognize security interests, which rest on contracts (and the UCC) rather than federal law." *Wright*, 492 F.3d at 833. In fact, any qualification of state law applicable to secured claims is a consequence of valuation under § 506, which no longer applies to 910 car claims. *See id.* A creditor is therefore free to pursue an unsecured deficiency claim based on its contract with the debtor and state law.

In support of their contention that federal law invalidates deficiency claims based on state law, the debtors urge us to adopt a novel interpretation of the

-11-

meaning of "allowed secured claim" in § 1325(a)(5). In essence, they contend that the bifurcation process under § 506(a) gives meaning to the phrase "allowed secured claim" in § 1325(a)(5). And because the hanging paragraph prevents application of § 506 to 910 car claims, we must give the phrase "allowed secured claim" in § 1325(a)(5) a particular meaning when applied to these claims. According to the debtors' interpretation, "allowed secured claim" in § 1325(a)(5) means "allowed *fully* secured claim" regardless of whether the debtor retains or surrenders the vehicle. They argue that, by preventing bifurcation under § 506(a), the hanging paragraph creates a "fiction" that the 910 vehicle is worth the exact amount of the balance on the loan. Because of this fictional value, the debtor pays the full amount under the retention option, § 1325(a)(5)(B), and therefore also satisfies the entire claim under the surrender option, § 1325(a)(5)(C).

We find this interpretation of § 1325(a)(5) unconvincing because the language governing the retention and surrender options differs significantly. If the debtor keeps the vehicle, the plan must ensure that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." § 1325(a)(5)(B)(ii). In other words, under subparagraph (B), the debtor must pay the present value of the entire claim (i.e., "the allowed amount of the claim"). Conversely, subparagraph (C) does not refer to value of any kind; it simply provides for plan confirmation when "the debtor surrenders the property securing

such claim to such holder." § 1325(a)(5)(C); s*ee also Osborn*, 515 F.3d at 821–22 (disagreeing with the view that surrender fully satisfies a 910 car claim because "the surrender option in § 1325(a)(5)(C) does not speak to satisfaction of a claim"). The debtors therefore ask us to read the valuation applicable to the retention option under § 1325(a)(5)(B) into the subparagraph governing surrender, § 1325(a)(5)(C). But we will not read language from one statutory section into another; if Congress intended to provide for full satisfaction of a 910 car claim upon surrender, it would have done so expressly. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (noting that when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (quotation omitted)).

The debtors' interpretation of the phrase of "allowed secured claim" is also based on the faulty premise that § 506(a) generally *defines* the term "allowed secured claim." Section 506(a) provides a method for the judicial valuation of an allowed secured claim; it does not provide a definition of the phrase "allowed secured claim" applicable to other provisions of the Bankruptcy Code. *See Dewsnup v. Timm*, 502 U.S. 410, 417 (1992) (holding that the meaning of "allowed secured claim" in § 506(a) does not determine the meaning of "allowed secured claim" in § 506(d)). In addition, nothing in § 1325(a)(5) suggests that § 506(a) determines the meaning of the phrase "allowed secured claim" in that

-13-

section.  In the absence of express language linking the meaning of "allowed secured claim" in § 1325(a)(5) to § 506(a), the most natural reading of the phrase is that it describes a claim that is both "allowed" under the Bankruptcy Code and "secured" by a lien.  *Cf. id.* (holding that the words "allowed secured claim" in § 506(d) refer to a claim that is secured by a lien and allowed under § 502).  Thus, the phrase "allowed secured claim" in § 1325(a)(5) simply means a claim that is allowed under § 502 and secured by a lien under state law.[5]

In sum, by choosing to surrender a 910 vehicle under § 1325(a)(5)(C), a debtor satisfies the requirements for plan confirmation under § 1325(a)(5) with respect to that particular allowed secured claim.  Whether the creditor may bring an unsecured claim to recover a deficiency after sale of the vehicle depends on the underlying contract and state law.  Here, the debtors agreed in their retail installment contracts to pay any deficiency remaining after liquidation, and DaimlerChrysler has the right under Oklahoma law to seek payment for any deficiency.  *See* 12A Okla. Stat. Ann. § 1-9-615(d)(2) (stating that a debtor is liable for any deficiency).  Because the Bankruptcy Code does not invalidate or

---

[5]Although the debtors and bankruptcy court reason that a creditor secured by a 910 vehicle cannot pursue an allowed *unsecured* claim without the bifurcation process of § 506(a), they do not adopt the position that § 506 is the only source of an allowed *secured* claim subject to treatment under § 1325(a)(5). Under this view, the entire 910 car claim would be unsecured. *See Wright*, 492 F.3d at 832.  Of course, this argument suffers from the same misconceptions as the debtors' other arguments, namely that state law must be implemented by the Bankruptcy Code, *id.* at 832–33, and § 506(a) defines the phrase "allowed secured claim" in § 1325(a)(5).

otherwise limit this right, DaimlerChrysler is entitled to pursue its unsecured claims under Oklahoma law.[6]

## III. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the BAP and REMAND to the bankruptcy court for further proceedings consistent with this opinion.

---

[6]We express no opinion, however, regarding the timeliness of DaimlerChrysler's unsecured claims.