09-0022-bk
AmeriCredit v. Tompkins

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2009

Argued: November 9, 2009                                     Decided: May 18, 2010

Docket No. 09-0022-bk

_____

AMERICREDIT FINANCIAL SERVICES, INC.,

*Petitioner-Appellant*,

-v.-

JESSE A. TOMPKINS, SONJA I. TOMPKINS,

*Respondents-Appellees*.

_____

Before:        LEVAL, PARKER, and LIVINGSTON, *Circuit Judges*.

On appeal from an August 13, 2008, memorandum decision and order of the United States Bankruptcy Court for the Southern District of New York (Morris, *J.*), petitioner-appellant argues that despite the 2005 amendments to 11 U.S.C. § 1325(a)(5), it is entitled to an unsecured claim with regard to a deficiency it incurred upon the surrender and sale of a 2006 Chevrolet Impala in which it held a purchase-money security interest. We conclude that the deficiency claim derives from the contract between the parties and background state law and that, in the absence of a Bankruptcy Code provision expressly disallowing it, such an unsecured claim may be maintained.

VACATED and REMANDED.

Martin A. Mooney (Mark D. Glastetter, *on the brief*), DEILY,

MOONEY & GLASTETTER, LLP, Albany, NY, *for Petitioner-Appellant*.

Andrea B. Malin, GENOVA & MALIN, Wappingers Falls, NY, *for Respondents-Appellees*.

LIVINGSTON, *Circuit Judge*:

Petitioner-appellant AmeriCredit Financial Services, Inc. ("AmeriCredit") appeals from a memorandum decision and order entered on August 13, 2008, in the United States Bankruptcy Court for the Southern District of New York (Morris, *J.*), expunging AmeriCredit's unsecured claim in the Chapter 13 proceeding of respondents-appellees Jesse and Sonja Tompkins ("the Tompkinses") and overruling its objection to the confirmation of the plan. For the reasons that follow, we vacate the judgment of the bankruptcy court and remand for further proceedings consistent with this opinion.

**BACKGROUND**

On August 25, 2006, the Tompkinses signed a contract with Long Beach Acceptance Corporation ("Long Beach") to finance a 2006 Chevrolet Impala, granting Long Beach a purchase-money security interest in the vehicle. Long Beach properly recorded the lien. AmeriCredit is Long Beach's successor in interest.

The Tompkinses failed to make their payments to AmeriCredit for the months of December 2007 and January 2008. On February 11, 2008, they filed a voluntary Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York. Shortly thereafter, AmeriCredit filed a proof of claim for $21,729.92 and the Tompkinses surrendered their automobile to AmeriCredit. The Tompkinses' first amended plan, filed February 26, 2008, provided as follows with regard to payments to be made to the holders of allowed secured claims: "Current secured payments [are] to be made by the debtor(s) directly to claimant except the claim of

2

AMERICREDIT, as the debtor has surrendered the 2006 Chevrolet Impala, in full satisfaction of the debt pursuant to 11 U.S.C. §506 and 11 U.S.C. §1325." AmeriCredit filed a motion for relief from the automatic stay so that it could sell the Impala, but it also filed an objection to confirmation of the plan on the ground that the Tompkinses could not surrender the vehicle as full satisfaction of the claim.

Upon obtaining relief from the automatic stay, AmeriCredit sold the vehicle and, after receiving less than the full $21,729.92 it claimed, it filed an amended claim as a general unsecured creditor for the deficiency: $15,373.92. The debtors objected. On August 13, 2008, the bankruptcy court sustained the objection, expunged the unsecured claim, and overruled AmeriCredit's objection to the plan confirmation, relying on its reasoning in an earlier case, *In re Pinti*, 363 B.R. 369 (Bankr. S.D.N.Y. 2007), to find that the Bankruptcy Code prevented AmeriCredit from maintaining its unsecured claim. The amended plan was confirmed on August 21. AmeriCredit appealed to the district court, which then certified a direct appeal to this Court. The debtors converted their case from Chapter 13 to Chapter 7 on May 6, 2009, during the pendency of this appeal.

**DISCUSSION**

As an initial matter, we examine our subject matter jurisdiction over this appeal; if we conclude that a case is moot, we lack jurisdiction to hear it. *Dean v. Blumenthal*, 577 F.3d 60, 64 (2d Cir. 2009). "A case is moot . . . when 'the parties lack a legally cognizable interest in the outcome.'" *Fox v. Bd. of Trustees*, 42 F.3d 135, 140 (2d Cir. 1994) (quoting *County of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). In a bankruptcy case, mootness may be based as well on "jurisdictional and equitable considerations stemming from the impracticability of fashioning fair and effective

3

judicial relief." *In re Sasso*, 409 B.R. 251, 254 (B.A.P. 1st Cir. 2009). The conversion of a petition from one chapter to another generally moots an appeal taken from an order in the original chapter. *Id.*

To the extent that AmeriCredit appeals the portion of the bankruptcy court's order overruling its objection to the confirmation of the Chapter 13 plan, this appeal is moot, as the conversion of the case to Chapter 7 renders the plan irrelevant and this Court unable to provide effective relief in that respect. We agree with the parties, however, that in the case at hand part of the appeal of the bankruptcy court's order is not moot, despite the conversion of the petition from Chapter 13 to Chapter 7. Whether an unsecured claim is allowed is a determination that, unlike many orders entered with respect to a Chapter 13 petition, has an impact on the distribution of assets in a Chapter 7 proceeding. We may therefore still grant AmeriCredit effective relief because, if its claim is allowed, it may take part in any future Chapter 7 distribution. *Cf. In re Howard's Express, Inc.*, 151 F. App'x 46, 48-49 (2d Cir. 2005) (summary order). Although the Tompkinses have received a Chapter 7 discharge during the pendency of the litigation, the case is not yet closed. *See In re Boodrow*, 126 F.3d 43, 47 (2d Cir. 1997) (finding that the entry of a discharge did not alone moot an appeal); *see also In re Sherman*, 491 F.3d 948, 968 (9th Cir. 2007) (same). Any assets that may yet come into the estate can, therefore, still be distributed to the creditors. Given that at this time there has been no distribution of assets to other creditors — nor, indeed, have any assets been found to distribute — the equitable concerns that often make fashioning relief impracticable in bankruptcy cases are lacking here.

We therefore turn to the substantive merits of the case, addressing the import of a "notorious" provision of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

4

("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, the so-called "hanging paragraph," which follows subparagraph (9) of 11 U.S.C. § 1325(a). *In re Peaslee*, 547 F.3d 177, 184 (2d Cir. 2008). AmeriCredit argues that contrary to the bankruptcy court's conclusion, the hanging paragraph did not bar its unsecured deficiency claim in the Chapter 13 bankruptcy proceeding, so that this claim should have been allowed and AmeriCredit should be able to take part in any future Chapter 7 distribution. Whether the hanging paragraph barred AmeriCredit's claim is a purely legal question that we review *de novo*. *See In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d Cir. 2009).

Section 1325(a) of the Bankruptcy Code, as amended by BAPCPA, sets forth requirements that must be met before the plan of repayment for a consumer in Chapter 13 may be confirmed. The statute provides three circumstances in which a secured claim poses no obstacle to plan confirmation: (1) when the secured creditor accepts the plan; (2) when the debtor surrenders the secured property; or (3) in an option known as a cramdown, when the debtor, over the creditor's objection, retains the secured property, "yet pay[s] only the present value of the collateral to the creditor . . . over the life of the plan," with "[t]he remaining balance of the debt [becoming] a general unsecured claim." *Capital One Auto Finance v. Osborn*, 515 F.3d 817, 820 (8th Cir. 2008); *see* 11 U.S.C. § 1325(a)(5).

In the context of a cramdown, the "allowed amount" of an allowed secured claim, *see* 11 U.S.C. § 1325(a)(5)(B)(ii), is determined by reference to section 506 of the Bankruptcy Code, which provides generally for the treatment of allowed secured claims in bankruptcy. Section 506(a) specifies, with regard to claims arising from debts secured by liens on property, that such claims may be divided into secured and unsecured portions in those circumstances where the collateral is inadequate to satisfy the debt: "[T]he unsecured portion is the amount by which the debt exceeds

5

the current value of the collateral."[1]  *In re Wright*, 492 F.3d 829, 830 (7th Cir. 2007).

The hanging paragraph, which we shall denote as 11 U.S.C. § 1325(a)(*), describes two situations in the context of Chapter 13 plans in which section 506(a)'s general prescription for dividing inadequately secured claims into their secured and unsecured parts do not apply. It reads as follows:

> For purposes of [§ 1325(a)(5), which describes the three circumstances in which a secured claim poses no obstacle for confirmation of a Chapter 13 plan], section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a)(*). By preventing recourse to section 506(a)'s provision for the bifurcation of a claim into its secured and unsecured parts, this passage has generally been interpreted to "prohibit[] cramdown of [purchase money security interests] secured by an automobile purchased

---

[1] Section 506(a)(1) states:
> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).

within 910 days of the debtor's bankruptcy filing." *In re Peaslee*, 547 F.3d at 184. A debtor who chooses to retain a vehicle purchased within this period must now either reach agreement with the creditor as to what is owed or must pay the entire claim, treating it as fully secured. *In re Barrett*, 543 F.3d 1239, 1243 (11th Cir. 2008).

The question presented here concerns the effect of the hanging paragraph not on the cramdown of vehicles purchased within 910 days of a bankruptcy filing, but on those cases in which a debtor surrenders a vehicle purchased within this period to his creditor. The hanging paragraph, by its terms, renders section 506(a) inapplicable not only to so-called "910 vehicles" that are retained by the debtor after a bankruptcy filing, but also to vehicles that are surrendered. May an undersecured creditor, in the absence of section 506(a) and its explicit provision for dividing a claim partly secured by a lien on property into its secured and unsecured components, maintain an unsecured claim for a deficiency not satisfied by the surrender and sale of the vehicle? One line of cases, originally espoused by several bankruptcy courts after the initial passage of BAPCPA, holds that without section 506(a) there simply is no deficiency claim; the loan is secured only by the vehicle, and surrender of the collateral satisfies the loan. *See, e.g.*, *In re Pinti*, 363 B.R. 369 (Bankr. S.D.N.Y. 2007). The second line of cases, including the holdings of the majority of our sister circuits, finds that a creditor can still pursue an unsecured claim for the deficiency. *See, e.g.*, *In re Miller*, 570 F.3d 633 (5th Cir. 2009); *In re Barrett*, 543 F.3d 1239; *In re Wright*, 492 F.3d 829. We now adopt the latter point of view.

When section 506 is removed from consideration, the question of how to treat the allowed claim of a creditor that is secured by a lien on property – meaning, whether and to what extent to treat it as a secured claim and to what extent it is unsecured – is left open and unanswered by the

7

Bankruptcy Code. In the absence of a controlling bankruptcy provision, however, the rights of the creditor under state law are not disturbed. As the Supreme Court has stated, "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979); *see also Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 127 S. Ct. 1199, 1206 (2007) ("[W]e generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed."). The parties do not dispute that the contract between them gives AmeriCredit the right to collect any deficiency from the Tompkinses if a sale of the vehicle fails to satisfy the debt, nor do they disagree that the law of New York permits such a property interest. N.Y. U.C.C. § 9-615(d). Under *Butner v. United States*, 440 U.S. 48, 55 (1979), and *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 127 S. Ct. 1199 (2007), we therefore presume that AmeriCredit's contractual right to collect any deficiency, a right enforceable under state law, is a claim applicable in bankruptcy unless expressly disallowed. Section 502 of the Bankruptcy Code, which lists disallowed claims, does not affect this deficiency claim. *See Osborn*, 515 F.3d at 822 & n.6; *In re Rodriguez*, 375 B.R. 535, 545 (B.A.P. 9th Cir. 2007).

The Tompkinses argue that section 506 alone provides the definition of the type of secured claim that a party holds in a bankruptcy proceeding and that, without it, the debt is fully satisfied by surrender under the requirements of section 1325. However, "nothing in § 1325(a)(5) says that [the] 'allowed secured claim' is satisfied by the debtor choosing the surrender option in subparagraph (C)." *Osborn*, 515 F.3d at 821 (quoting *In re Hoffman*, 359 B.R. 163, 166 (Bankr. E.D. Mich.

8

2006)) (internal quotation marks omitted). Moreover, under the theory that section 506 alone generates the secured nature of a claim, one could as easily come to the conclusion, proposed by *amici curiae* in the Seventh Circuit, that a creditor whose loan is affected by the hanging paragraph has an entirely *unsecured* claim rather than an entirely *secured* one. *See In re Wright*, 492 F.3d at 832. Both results, however, deny the presumption of state law applicability explicated in *Butner* and expanded upon in *Travelers*. As our sister Circuits have recognized, this is error: "Creditors don't need § 506 to create, allow, or recognize security interests, which rest on contracts (and the UCC) rather than federal law. . . . The fallback under *Butner* is the parties' contract . . . rather than non-recourse secured debt . . . or no security interest." *Id.* at 833.

Because both state law and the contract of the parties give AmeriCredit the right to an unsecured deficiency judgment, on the record presented to this Court it is entitled to an unsecured claim in the amount of $15,373.92.

**CONCLUSION**

For all of the foregoing reasons, the judgment of the bankruptcy court is therefore VACATED and the case is REMANDED to the district court with instructions to remand to the bankruptcy court for further proceedings in accordance with this opinion.