FILED
United States Court of Appeals
Tenth Circuit

February 11, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

In re: WILLIS RAY MATNEY;
PAMELA KAY MATNEY,

Debtors.

-----------------------------------------------

JOHN E. FITZGIBBONS,

Appellant,

v.

SALLY J. ZEMAN, Trustee,

Appellee.

No. 09-1170
(No. CO-08-058)
(BAP)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Appellant John E. Fitzgibbons served as legal counsel for debtors in the underlying bankruptcy proceeding. After the bankruptcy court confirmed debtors' Chapter 13 Plan, Mr. Fitzgibbons submitted an application seeking $13,750 in legal fees, though he claimed to have earned over $19,000. The Standing Chapter 13 Trustee objected to the application on numerous grounds. Following a hearing, the bankruptcy court determined that Mr. Fitzgibbons' fee should be limited to the $4,750 he had already received for his legal services from debtors. The Tenth Circuit Bankruptcy Appellate Panel (BAP) affirmed in an unpublished decision, and later denied Mr. Fitzgibbons' motion for rehearing. Mr. Fitzgibbons now appeals from the BAP's initial merits decision.[1] We exercise jurisdiction under 28 U.S.C. § 158(d) and affirm.

**Standard of Review**

Although the case reaches us by way of the BAP, we independently review the bankruptcy court's decision. *Daimler Chrysler Fin. Servs. Ams. L.L.C. v. Ballard (In re Ballard)*, 526 F.3d 634, 636 (10th Cir. 2008). Absent an abuse of discretion, we will not disturb its decision to award a reduced fee. *See Rubner & Kunter P.C. v. U.S. Trustee (In re Lederman Enters., Inc.)*, 997 F.2d 1321, 1322

---

[1] Mr. Fitzgibbons filed his notice of appeal from the BAP's initial decision while his motion for rehearing was pending. That notice became effective for purposes of appealing the initial decision upon the denial of rehearing. *See* Fed. R. App. P. 6(b)(2)(A)(i). Mr. Fitzgibbons did not, however, amend the notice after the denial of rehearing to include that later order in this appeal. *See* Fed. R. App. P. 6(b)(2)(A)(ii).

(10th Cir. 1993). Of course, such an award may turn on specific legal premises or factual findings, and in that event "we review de novo any statutory interpretation or other legal analysis underlying the [fee] decision and review for clear error any supporting findings of fact." *Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1183 (10th Cir. 2008) (quotation omitted). *See In re Ballard*, 526 F.3d at 636 (noting usual de novo and clear error standards apply to circuit review of bankruptcy court decisions). Mr. Fitzgibbons also challenges an evidentiary ruling at the fee hearing, involving the admission of expert opinion testimony from a witness not previously disclosed as an expert. We review that particular objection also for an abuse of discretion. *See United States v. Charley*, 189 F.3d 1251, 1261-62 (10th Cir. 1999).

## Summary of Proceedings

The decisions issued by the bankruptcy court and the BAP discussed the factual and procedural background at length, and that discussion need not be repeated in full here. But we do set out those matters relevant to our disposition of the issues raised in this appeal.

### A. Fee Hearing

At the fee hearing, Mr. Fitzgibbons testified in favor of his application and the Trustee testified against it. As the bankruptcy court noted, the fee sought was well in excess of the presumptive fee of $1,800 for Chapter 13 proceedings (increased to $3000 for more recent applications). The bulk of the excess was

attributed to an adversary proceeding Mr. Fitzgibbons had pursued alongside the usual plan confirmation process. His justification for doing so was that it was essential to establish how much of his clients' large tax debt (nearly $350,000) was secured by an existing lien and how the remainder would be treated as to dischargeability. He insisted that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub.L. No. 109-8, 119 Stat. 23, interjected substantial uncertainty into dischargeability issues.

The adversary proceeding was resolved by a stipulation providing in pertinent part that (1) the Internal Revenue Service (IRS) had properly perfected its lien, which secured $14,594 of the tax debt in the bankruptcy; (2) the IRS was also secured, outside of bankruptcy, in debtors' retirement plans, valued (at about $59,000) as of the date of the petition; (3) the latter amount could be accounted for either as a secured claim in debtors' Chapter 13 Plan or by retaining the IRS lien on the retirement plans; and (4) debtors' tax debt would be discharged upon completion of Chapter 13 Plan payments. Aplt. App. at 180-82. Mr. Fitzgibbons repeatedly stressed the value of this stipulation, which gave his clients the assurance that if they complied with the stipulation and their associated Chapter 13 Plan, their tax liabilities would be put behind them. He concluded his case at the hearing by saying "I think that certainty is worth the [additional $9000] that I'm asking for." *Id.* at 316.

The Trustee expressed a very different view of the adversary proceeding, seeing it as unnecessary. Most practitioners, she said, would just work through such issues with the IRS, far more efficiently, in the ordinary course of the confirmation process. And, as for the confirmation process here, she pointed out numerous instances in which inaction or delay by Mr. Fitzgibbons had unduly prolonged the proceedings and required multiple amendments to the Chapter 13 Plan. She also indicated that his fee application included time for researching areas that a bankruptcy practitioner should have known or learned as a matter of professional responsibility. But she did not in her direct testimony give an expert opinion regarding fees. When counsel for the Trustee began to ask for her opinion, Mr. Fitzgibbons objected on the basis that she had not been disclosed as an expert witness, and the bankruptcy court promptly sustained the objection.

During cross-examination, however, Mr. Fitzgibbons repeatedly asked the Trustee to opine on matters relating to the substance of his legal representation and the reasonableness of his fee request. After eliciting a particular unfavorable opinion, he began inquiring into the Trustee's professional qualifications for expressing the opinion, to which counsel for the Trustee objected. At that point, the bankruptcy court held that Mr. Fitzgibbons had already opened the door to expert opinion testimony from the Trustee, so either side could pursue relevant inquiries in that regard. On redirect, counsel for the Trustee obtained expert opinions on the following material points: (1) filing five Chapter 13 Plans before

getting one confirmed in this case was unreasonable; with adequate factual research and effective communication by Mr. Fitzgibbons, no more than two should have been necessary; (2) it was unreasonable to pursue the adversary proceeding in addition to the confirmation process; and (3) taking into account the *Johnson* factors governing fee awards,[2] a fee in the neighborhood of $4,600 would be reasonable.

## B.  Bankruptcy Court's Fee Order

The bankruptcy court issued a thorough decision.  First, it examined all of the governing factors in light of the record.  While the testimony of the Trustee was important, the court did not simply adopt her conclusions.  Rather, the court considered her testimony along with the rest of the record, noting where and why it agreed with particular points she had made.  *See* Bankruptcy Court Order[3] at 4-8.  Indeed, the court concluded its analysis of the fee factors by stating that "*[b]ased on the Court's experience* in reviewing fee applications, this case falls much closer to the lower [i.e., $1,800] range of fees it has awarded."  *Id.* at 8 (emphasis added).

---

[2]    The factors set out in the seminal case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), are applicable to attorney fee determinations in bankruptcy cases under 11 U.S.C. § 330.  *See Houlihan Lokey Howard & Zukin Capital v. Unsecured Creditors' Liquidating Trust (In re Commercial Fin. Servs., Inc.)*, 427 F.3d 804, 811 (10th Cir. 2005).

[3]    The bankruptcy court's unpublished fee order is included as Attachment 1 to Appellant's Opening Brief.

The bankruptcy court then considered several of the broader objections the Trustee had raised in opposition to the fee application. The court agreed with several criticisms of the timeliness and competence of counsel's prosecution of the bankruptcy case. *Id.* The court also found that "the detail and description of the legal services set forth [in the fee application] to be woefully inadequate . . . to determine whether the amount of time for such legal services was reasonable," noting that "[t]he lack of information provides additional support for not allowing all requested fees." *Id.* at 9. Finally, and "most troubling to the Court," *id.*, was Mr. Fitzgibbons' noncompliance with fee disclosure requirements. The court's explanation of why–consistent with a list of cited cases–this omission is in itself "more than sufficient to deny some or all of his requested fees in this case," *id.* at 10, is worth quoting:

> [T]he Court understands Mr. Fitzgibbons to have received $2,250 at or around the time the Debtors' case was filed. This information was not provided until approximately fourteen months after the case was filed. However, at some other time during the case, unbeknownst to the Trustee, creditors, or the Court, the Debtors must have paid Fitzgibbons an additional $2,500, based on his Fee Application, which states Fitzgibbons has been paid $4,750 to date. This presents a host of questions, not the least of which is the question of how the Debtors obtained additional funds to pay Fitzgibbons while they were presumably committing all of their disposable income to their Chapter 13 plan. This illustrates the reason for the fee disclosure requirement under [11 U.S.C.] § 329 and Fed. R. Bankr. P. 2016(b), to ensure the Court can carry out its obligation to scrutinize compensation of debtor's attorneys and thereby protect creditors.

*Id.*

Having concluded, "[b]ased on its review of the *Johnson* factors and the

Trustee's Objection to the Fee Application," that "the requested legal fees are not

reasonable under the circumstances of this case," *id.*, the bankruptcy court came

to the ultimate question of what fee, if any, to allow.  At this point, the court

recited that "the Trustee was endorsed as an expert witness in Chapter 13 fee

matters and indicated she believed a reasonable fee in this case would be

approximately $4,600." *Id.*  The court essentially adopted that figure, though it

concluded that ordering disgorgement of the additional $150 that debtors had

already paid Mr. Fitzgibbons was not appropriate.  *Id.*  It therefore awarded

Mr. Fitzgibbons the $4,750 for his legal services in the case.  *Id.*

## C.  Appeal to the BAP

Mr. Fitzgibbons raised two issues in his appeal to the BAP:

1.  Whether the [bankruptcy] court erred in allowing expert
testimony which had not been disclosed as required by
Fed. R. Civ. P. 26(a)(2).

2.  Whether in the wake of the "new super light (chapter 13)
discharge" enacted by [BAPCPA] the [bankruptcy] court erred in
refusing to award attorney fees in conjunction with Adversary
Proceeding 09-01906 MER in which [the IRS] stipulated the bulk of
debtors' $354, 004.49 in federal taxes would be discharged upon
payment of $14,594.00 through the Chapter 13 Plan.

Aplt. App. at 5.

The BAP held that the bankruptcy court had not abused its discretion in

allowing the Trustee's expert testimony, for several reasons.  The substance of

-8-

her testimony clearly fell within the parameters of her pretrial disclosure as a lay witness (concerning Mr. Fitzgibbons' legal representation, the reasonableness of his requested fee, and representation by other attorneys in similar cases), and the bankruptcy court did not err in finding that Mr. Fitzgibbons had waived his right to object to her use as an expert on such matters by his own questioning on cross-examination. BAP Opinion[4] at 11-12. The BAP also noted that the bankruptcy court did not rely solely on the Trustee's testimony in resolving the fee application; indeed, that much of what the Trustee had touched on was also within the expertise of the bankruptcy court itself. *Id.* at 12.

The BAP addressed the second issue raised by Mr. Fitzgibbons, regarding the disallowance of fees for the adversary proceeding, somewhat less directly, as encompassed within the overall determination of reasonableness. As to that determination, the BAP recounted the bankruptcy court's analysis of the *Johnson* factors and the Trustees objections and concluded that the bankruptcy court "1) used the appropriate factors to examine and evaluate the Fee Application; 2) conducted a thorough analysis of all of the bases for Trustee's objection; 3) did not make any findings of fact that the record on appeal demonstrates were clearly erroneous; and 4) issued a well-supported and well-reasoned decision." *Id.* at 17.

---

[4]     The BAP's unpublished opinion is included as Attachment 3 to Appellant's Opening Brief.

## Issues Raised on this Appeal

Mr. Fitzgibbons has framed his issues on this appeal in terms that differ considerably from those used in his appeal to the BAP. Indeed, his challenge to the Trustee's expert testimony for lack of pretrial disclosure is not even alluded to in his formal Statement of Issues, *see* Aplt. Opening Br. at 2, and there are only passing references to the bankruptcy court's finding of waiver on that point in the argument section where a very different challenge to her testimony is pursued, *see id.* at 25, 26. It appears the non-disclosure objection, as a distinct challenge to the admission of the Trustee's expert testimony, has been abandoned. In any event, for the reasons explained by the bankruptcy court and the BAP, we would not find any abuse of discretion by the bankruptcy court in this regard.

The two issues Mr. Fitzgibbons has designated for our review are:

Whether the bankruptcy court and BAP opinions should be reversed and reviewed *de novo* because the "legal underpinnings" show these courts relied on the Trustee's opinion that filing an adversary proceeding was unnecessary because the "cram down" provisions of 11 USCA 1325(a)(5) and 506 should be utilized and that an installment agreement was cancelled even though the Trustee stated she had not studied Chapter 13 tax dischargeability issues of BAPCPA.

Whether the bankruptcy court and BAP should be reversed for abuse of discretion in failing to act as the *Daubert* gatekeeper and in failing to consider National Association of Bankruptcy Judges, American Bankruptcy Law scholarly articles and cases concerning the new "superlight" Ch 13 bankruptcy discharge[.]

Aplt. Opening Br. at 2. Most aspects of these arguments can be traced to points at least arguably preserved in Mr. Fitzgibbons' appeal to the BAP, but we stress that assignments of error are not subject to substantive alteration from one appellate level to the next. Wholesale reformulations of the sort evident here risk adverse procedural consequences for the appellant who may omit preserved issues and substitute unpreserved issues in the process.

Most of Mr. Fitzgibbons' briefing challenges, on various legal bases, the bankruptcy court's conclusion that the adversary proceeding was unnecessary in light of what could be done in connection with the Plan confirmation process. The first of these assertedly erroneous "legal underpinnings" of the court's conclusion relates to debtors' retirement plans. Mr. Fitzgibbons argues that these plans fell outside the bankruptcy estate under *Patterson v. Shumate*, 504 U.S. 753 (1992), and hence the rights of the IRS in these significant assets would not be resolved by the Chapter 13 Plan. But he does not explain how an adversary proceeding in the bankruptcy case would have resolved the parties' interests in this non-bankruptcy property. In any event, this whole line of argument misses the basic point here. The thrust of the Trustee's testimony and the bankruptcy court's conclusion about the adversary proceeding being ill-advised was that an experienced Chapter 13 practitioner would have communicated effectively and efficiently with the IRS to work out an agreement about this sort of complication during the Plan confirmation process, making ancillary adversarial proceedings

unnecessary. The fact that the Plan itself would not directly address the matter does not nullify this point. Mr. Fitzgibbons has not demonstrated why it was necessary to bring an adversary proceeding in order to reach a satisfactory agreement with the IRS regarding debtors' retirement plans.

Mr. Fitzgibbons also notes that debtors had entered into an agreement with the IRS to make monthly installment payments of $1,000 on their tax liability, and he insists that the need for clarification of the consequences, particularly under BAPCPA, of their default on this agreement prior to filing for bankruptcy warranted pursuit of the adversary proceeding. He cites legislative statements that, he says, show BAPCPA added provisions to 11 U.S.C § 523 to preclude discharge of tax-settlement installment obligations due within one year before the bankruptcy filing. Actually, the legislative history he quotes from in his brief and provides in his appendix, Aplt. App. at 75-79, is not for BAPCPA. It comes from the House and Senate Reports for *the Bankruptcy Reform Act of 1978*.[5] And aside from this patently inapposite legislative history (Congress has amended § 523 at least ten times since 1978), Mr. Fitzgibbons offers no argument based on current statutory language to explain his concern about the potential nondischargeability of debtors' obligations under the tax settlement agreement. In any event, we come back to the same point made above in connection with debtors' retirement

---

[5] See H.R. Rep. 95-595, 1978 U.S.C.C.A.N. 5963, 6320-21, 6499-6500; S. Rep. 95-989, 1978 U.S.C.C.A.N. 5787, 5863-66.

plans:  Mr. Fitzgibbons has not shown that his pursuit of the adversary proceeding was a necessary response to the potential issue he perceived; there is nothing to suggest that the agreement reached with the IRS could not have been worked out effectively and efficiently in the course of the confirmation process.

Mr. Fitzgibbons also seems to contend that the BAPCPA amendment to 11 U.S.C. § 1325(a), adding the so-called "hanging paragraph" to exempt some creditors from the "cram down" rule,[6] may have made some of debtors' unpaid installment obligations to the IRS non-dischargeable, justifying his resort to the adversarial proceeding to resolve the issue.  The relevant change here applies to debts "incurred during the 1-year period preceding" bankruptcy.  *Id.*  But the unpaid tax liability owed by debtors arose many years before bankruptcy; IRS installment agreements are merely one authorized means of collecting an existing tax debt.  *See* 26 U.S.C. § 6159.  And, in any event, as we have noted repeatedly in other respects, Mr. Fitzgibbons has not established that resolution of the legal issue he perceives here required resort to an adversary hearing.

We note that in connection with his references to cram down and § 1325(a), Mr. Fitzgibbons also advances an additional objection to the allowance of expert testimony from the Trustee.  He contends her responses to his questions about her

---

[6]     Briefly put, the "cram down" rule, based on the operation of § 1325(a)(5) and 11 U.S.C. § 506, bifurcates a secured claim into a secured component limited to the current value of the collateral and an unsecured claim for the remainder. *See In re Ballard*, 526 F.3d at 637-38 (discussing cram down and BAPCPA's amendment adding "hanging" paragraph at end of § 1325(a)).

study of BAPCPA with regard to dischargeability and cram down demonstrated that she was not qualified to opine on the matter. Mr. Fitzgibbons never raised this (or any other) substantive objection to the Trustee's qualification to provide expert testimony, and we would not disturb the decision under review on the basis of this untimely objection. But we do not wish to suggest there was a problem with the Trustee's expert testimony. She was qualified as an expert through questioning by Trustee's counsel, and the testimony Mr. Fitzgibbons cites as admitting some gap in her knowledge regarding dischargeability and cram down after BAPCPA does not support his claim. In response to his inquiry regarding the amount of time she had spent studying BAPCPA and dischargeability issues, the Trustee said, "A lot of time. Not on the one issue of tax dischargeability, but a lot of time on the new law." Aplt. App. at 295. Mr. Fitzgibbons' strained effort to read this statement as disclaiming any study of BAPCPA's effect on dischargeability issues is utterly unpersuasive.

Mr. Fitzgibbons also contends the bankruptcy court abused its discretion by holding that some legal materials he had submitted discussing changes BAPCPA made in the area of dischargeability did not "'*per se*, support the filing of an adversary proceeding under circumstances similar to this case.'" Aplt. Opening Br. at 26 (quoting Bankruptcy Court Order at 6). But he offers no particularized argument in this regard, such as specific legal points substantiated in the materials that *would* per se support his filing of the adversary proceeding. Rather,

-14-

he makes a legally inapposite objection under the rules governing admission and exclusion of evidence on grounds of relevance and prejudice. The bankruptcy court did not exclude the cited materials; it admitted them and merely found them insufficiently persuasive to conclusively outweigh the other evidence the court discussed at length in its decision.

Finally, it is important to acknowledge the importance the bankruptcy court rightly placed on Mr. Fitzgibbons' noncompliance with fee disclosure obligations. While it is not clear whether the court intended this misfeasance to serve–as it may have–as a fully distinct alternative rationale for limiting Mr. Fitztgibbons' fee to what he had already been paid, it certainly augments the other justifications the court expressed for its fee reduction that we have considered above.

The judgment of the BAP affirming the order of the Bankruptcy Court is AFFIRMED.

Entered for the Court


Wade Brorby
Senior Circuit Judge